GULF AND SHIP ISLAND RAILROAD COMPANY *v.* WIRT ADAMS, STATE REVENUE AGENT.

YAZOO AND MISSISSIPPI VALLEY RAILROAD COMPANY *v.* WIRT ADAMS, STATE REVENUE AGENT.

(TWO CASES.)

PRIVILEGE TAXES. *Railroads. Laws* 1898, *p.* 23, *sec.* 66. *Additional tax. Railroads exempt from supervision.*

It is a condition precedent to the state's right, under the act of 1898 (Laws, p. 23), to collect the ten dollars per mile additional privilege tax imposed on railroads claiming exemption from state supervision under maximum and minimum provisions in their charters that the state railroad commission should have classified the railroad, not only as being a first, second, third or narrow gauge class railroad, but also as being one claiming exemption from supervision as specified, the constitutionality of the act being assumed.

FROM the circuit court of, first district, Hinds county.

HON. ROBERT POWELL, Judge.

Wirt Adams, State Revenue Agent, an officer of the state empowered (Laws 1894, p. 29) to sue for and collect past due and unpaid taxes in certain cases, the appellee in both cases, was plaintiff in the court below in both of them; the Gulf and Ship Island Railroad Company, appellant, was defendant in one of the suits, and the Yazoo and Mississippi Valley Railroad Company, appellant, was defendant in the other case. Plaintiff obtained a judgment in each of the cases in the court below, and each of the defendants appealed to the supreme court. The cases, being alike in many particulars, were argued, submitted, and considered together.

The plaintiffs sought, in each case, to recover the additional privilege tax of $10 per mile imposed by the act of 1898, p. 23,

sec. 66, set out in the opinion of the court.    The substantial averments of the declarations are as follows: "That Adams is the state revenue agent, invested with all the powers conferred on that officer; that the defendants are and were corporations chartered by act of the legislature of Mississippi, contained and printed in the laws of Mississippi of 1882, and the charters of each defendant in the case against it is referred to and made part of each count of the declaration, and the nineteenth section of the Gulf & Ship Island Railroad Company's charter is set out in full in each count of the declaration against it, and the corresponding section of the Yazoo & Mississippi Valley Railroad Company's charter in the declaration against it; that the state of Mississippi had duly and regularly chartered the railroad companies, and each of the companies, during all of the time involved in the suit, were exercising its powers and privileges, and were fixing and determining all rates to be charged the class of persons and things named in said section of their resepective charters; that the state had created the railroad commission, which was duly organized, and during all of said time the commission claimed the right to exercise control and jurisdiction over the regulation of rates and charges by the several railroads in the state for transporting passengers and freight within the state; that the defendants during said years, in pursuance of the respective sections of their charters, claimed exemption, under said maximum and minimum provisions in their charters, from supervision by said state through its railroad commission, and, by reason of the defendant's so claiming exemption from state supervision under said maximum and minimum provisions in their charters, the defendants became and were liable to pay $10 per mile, the additional tax mentioned in the act of 1898, and the length of defendants' roads are set out in the respective declarations, and the sum demanded is stated with legal accuracy.    The defendants demurred to the declarations, assigning, among other causes, the following: "The plaintiff fails to charge that the railroad commission had classified de-

fendant as liable to the payment of the tax for which the suit is brought." The demurrers were overruled. A number of pleas were filed, and there was a trial on an agreed statement of facts. The view of the case taken by the court makes it unnecessary to state any of the agreed facts.

*E. J. Bowers* and *McWillie & Thompson,* for appellant, Gulf and Ship Island Railroad Company.

Is the defendant liable for the additional privilege tax of $10 per mile, under sec. 66, Laws 1898, p. 23, assuming the act to be constitutional, the railroad commission not having classified defendant as being so liable or taken action looking to that end?

It will be observed that the act itself (sec. 66) divides the railroads of the state into four classes denominated as first, second, third, and narrow gauge, and imposes on the first class a privilege tax per mile, $20; on the second class, $15; on the third class, $10; and on the narrow guage roads, $2. If the statute stopped there and failed to provide for classification, standard guage railroads could not pay the tax, unless all paid the maximum sum, because it would not be known to what class they belonged, and certainly the law cannot be construed to require any road to pay more than what is due. Something, therefore, is required to be done in order to render standard guage railroads liable for even the privilege tax first mentioned in the section. The roads had to be classified. The law creates only four classes. The language of the act, "On each railroad claiming exemption from state supervision under maximum and minimum provisions in their charters, an *additional privilege* tax per mile of $10," does not create a fifth class, for this language directly follows the legislative declaration that "railroads are divided into four classes." And then follows the direction to the railroad commission to classify the roads *"according to such exemption claims, and the gross earnings of each."*

There can be no liability on a standard guaged road for the primary privilege tax without classification of the railroads, and under the act, classification is made *"according to such charter exemption claims and the gross earnings of each"* of the roads. The classification has to be made, not according to the one or the other, but according to both. Hence, in classifying, the commission is compelled to consider "such charter exemption claims" as well as gross earnings.

The declaration fails to aver that the appellant was ever classified under the act by the railroad commission, and hence in our judgment the demurrer to it should have been sustained. The act, if valid, levied the tax, but in the case of railroads, something more than the levy, something in the nature of an assessment, was essential to impose liability even for the primary tax. This something more was a classification.

The demurrer to the declaration having been overruled, the defendant pleaded (seventh plea) that "the railroad commission had, for each of the years involved, classified defendant as a third class railroad, liable only for a privilege tax of $10 per mile, which tax had been paid." But the court below held the plea bad.

Now if, as must be treated as true on the record, the railroad commission actually proceeded under the act and classified defendant according to its charter exemption claims and gross earnings, that is to say considering both things, and determined it to be a third-class railroad, and failed to classify it as being liable because of its exemption claims to the $10 additional privilege tax, then defendant only became liable for the primary $10 tax, which it paid.

The commission, the law being valid, could have classified defendant "as a third-class railroad making exemption claims," and defendant would have been liable for both taxes, the primary and the additional one, aggregating $20 per mile. But the commission did not so act. Its action made defendant liable only for the primary tax, and this appellant paid.

There is no escaping the conclusion that classification, action by the railroad commission, is essential to liability on the part of a standard guaged road for the primary tax. The point we make is that the two things cannot be separated, action by the commission is just as essential in reference to the additional tax as to the primary tax, and the absence of action in this case imposing or seeking to impose the additional tax on defendant is a complete defense to this suit, and should have been so adjudged by the court below.

Not only is this complete defense a cause of demurrer to the declaration, but the seventh plea brings before the court what was really done by the commission, and that was a judgment exonerating appellant from the additional tax sued for, because defendant was classified by the railroad commission, according to exemption claims and gross earnings, both things in mind, and assigned it to a class upon which only the primary $10 tax per mile was imposed. When the commission considering both things, exemption claims and gross earnings, failed to designate appellant as liable for the additional tax, no charge of fraud being made, that was the end of the matter. The state itself was acting in the matter by the railroad commission. To that tribunal the state submitted itself and the railroads were required to and did submit themselves. As we have before said, the classification of the railroads for privilege taxes is much the same as an assessment. It is just as essential to impose liability on a railroad for any part of the privilege taxes that it should be classified as an assessment of a tract of land, is essential to its liability for taxes. The tribunal which the state has designated to make this classification assessment cannot act, in so doing, without considering exemption claims. It did act in this case, it was not imposed upon, or deceived or defrauded in any way, and it adjudged defendant to be a third class railroad and liable only for such privilege taxes as it paid before the beginning of this suit, and yet the court below adjudged this

to be no defense, certainly it did so when it sustained the demurrer to the seventh plea.

Our argument on this point, on the demurrer to the declaration, succinctly stated is this:

Major premise: Classification by the railroad commission is necessary to impose liability on a railroad for the privilege taxes demanded by this suit.

Minor premise: The declaration does not aver or show in any way that defendant was ever classified by the commission.

Conclusion: Therefore the declaration does not state a cause of action against defendant.

And the argument on the demurrer to the seventh plea may be stated thus:

Major premise: Classification by the railroad commission is necessary to impose liability on a railroad for privilege taxes.

Minor premise: The commission did, duly considering exemption claims, classify defendant as a third class railroad liable to the primary $10 per mile tax without adjudging it to be liable for an additional tax, and defendant paid all that it was classified to pay.

Conclusion: Defendant was not further liable.


*Mayes & Longstreet,* for appellant, Yazoo and Mississippi Valley Railroad Company.

The act of 1898 is an amendment to the act of 1896, page 44; and it is the *amendment* on which the state revenue agent bases his suit.

The act of 1896 itself divided railroads into four classes and provided that the railroad commission should *classify* the several railroads, assigning each railroad to one class or the other according to the gross earnings of each; but the act of 1898 provided, further, that the railroad commission should classify the several railroads according to such charter exemption claims *and* according to the gross earnings of each; thus bringing in,

for the first time, an additional classification which previously had not existed in our laws.

It is manifest that in order to carry out the act of 1898 the railroad commission was required to take two distinct steps: First, it was required to classify the various railroads according to their claim of charter exemptions. And secondly, to classify, further, each of the primary classes into first, second, or third classes according to their gross earnings, and into narrow gauge according to the facts. Working under this statute the railroad commission were required to make eight different classes which were as follows: First-class railroads claiming exemptions; first-class railroads not claiming exemptions; second-class railroads claiming exemptions; second-class railroads not claiming exemptions, etc., throughout the list; and each of these eight classes would be liable to a different basis of taxation. For instance first-class railroads claiming exemptions would be $20 plus $10 per mile, while first-class railroads not claiming exemptions would be $20 per mile. Second-class railroads claiming exemptions would be $15 plus $10 per mile, and so on.

This classification of the railroads made by the commission was not perhaps, technically speaking, an assessment; but it was in the nature of an assessment. The action of the legislature fixing the amount of privilege taxes to be paid, contingently and not absolutely, was in the nature of a levy, corresponding precisely to the provision contained in every revenue law by which the *ad valorem* state tax is fixed at four, five, or six mills, as the case may be. This is the fixation of the rate of *ad valorem* taxation, and the act of 1898 is the fixation by the legislature of the rate of privilege taxation; but a proper classification by the commission was necessary in order to apply that rate specifically, and thereby to determine what the taxes to be paid should amount to in each particular instance; exactly as, in *ad valorem* taxation, an assessment is necessary in order to

determine what the established rate of state or county taxation shall produce in each particular instance.

It is a cardinal principle in taxation that in order that the tax shall become due and payable each particular step prescribed by law to be taken, must be taken first or no debt arises. Burroughs on Taxation, page 210; *State* v. *Adler,* 68 Miss., 487; *Thibodeaux* v. *State,* 69 Miss., 683.

This is so very true that even the state revenue agent can by no action of his supply the necessity for an assessment. *State* v. *Tonella,* 70 Miss., 701.

The fact that this is privilege taxation and not *ad volorem* taxation makes no difference on this point. We concede that the legislature might have dispensed with the necessity for a classification by the railroad commission and might directly have imposed the privilege taxes, but that is not the question. It is not here a question of legislative power, but a question of legislative intention. Has the legislature dispensed with classification by the railroad commission as a necessary pre-requisite? The legislature might very easily have provided that railroads having charters granting immunity from supervision should pay an additional $10 per mile, and have said nothing about any classification by the railroad commission; and if it had put the law in that shape we might concede that on failure of a railroad to pay the additional $10 per mile an action like this could have been brought by the state revenue agent after the tax came into default. But the law is not so written. It is not for us, in this connection, to pass upon the motives which induced the legislature to prescribe this previous classification. We find it in the statute, and that is all there is about it; for outside the statute there is no liability whatever, nor can be any. It is very easy to see, though, why the legislature made this requirement, and put this function upon the railroad commission. It was the actual *claim* of exemption from rate supervision made by the railroad company which formed the

basis of this extra taxation, not a mere title to claim it; and it is manifest that no man nor body of men were so well qualified to know whether the railroad company had in fact asserted such claim or not, as the railroad commission were; because the assertion of a claim of that sort must, by its very nature, be made to and before the railroad commission itself. In this general connection we must remember that laws imposing privilege taxes are to be considered favorably to the citizens, and no occupation is to be taxed unless clearly within the provision of such law. *Railroad Co.* v. *State*, 62 Miss., 105.

It seems clear that by similar reasoning no occupation is to be subjected to a cumulative and additional privilege tax, unless it has first been determined to be subject to such additional tax in the manner prescribed by law.

Furthermore, the railroad commission was not only required to classify, etc., but they are required to certify such classification to the chancery clerks of the counties through which each road shall run. What is the object of this certification? It is obviously to confer authority upon the county tax collectors to collect these taxes, just as a similar certification is required to be made by the railroad commission acting as *ad valorem* tax-assessors. Would a sheriff be authorized to collect from a railroad company *ad valorem* taxes which had not been assessed by the railroad commission and certified to the chancery clerk's office as the law requires? Manifestly not. For the same reason he is not authorized to collect this additional privilege tax, or any privilege tax, unless first the railroads shall have been classified, and such classification certified down to the chancery clerk's office according to law.

An additional reason why the commission is required to classify and certify is to produce uniformity. It was not intended that the same railroad running through eight or ten or more counties of the state should be by the local authorities classified on one basis in one county and on another basis in some other county.

Moreover, the fact that the railroad commission, when classifying under this statute, in dealing with any particular railroad failed to classify it as a railroad claiming exemptions, was, of and in itself, an actual classification of it, in legal effect, as a railroad not claiming an exemption. For this reason alone the revenue agent's cause of action did not lie as claimed.

*Green & Green,* for appellee.

An assessment of the privilege taxes by the railroad commission is not required as a condition precedent to this suit. *Denver City Ry. Co.* v. *Denver,* 52 Am. St. Rep., 242.

"As a privilege is the exercise of an occupation or business which requires a license from some proper authority, designated by a general law, and not open to all, or to any one without such license; the tax on a privilege will commonly take the form of a license, and may be graduated by the supposed value of the privilege tax. It is the occupation that is taxed, and not the goods, and it is incumbent upon him who engages in the business, whether he be agent or owner, to take out license." 1 Desty Tax, p. 301, 2 citing; License Tax Cases, 5 Wall, 472; *Temple* v. *Sumner,* 51 Miss., 13.

An *assessment* applies to *ad valorem* taxation and not to privilege taxes.

With railroads, as with every other privilege, the liability or not to the privilege tax is determinable not by any judicial proceeding, as with *ad valorem* taxation, but by the existence or not of the occupation or privilege.

By § 3351, Code 1892, the privilege tax on ferries is fixed according to income, and yet there is no judicial ascertainment provided for. Section 3360, Code 1892, makes the amount of privilege tax on insurance agents vary with the population of the town, and yet no judicial ascertainment of the population is provided. And so with a number of other occupations taxed by chap. 108, Code 1892, as privileges.

All persons except insurance, telegraph, express, and sleeping car companies, building and loan associations, and commercial agencies under § 3401, Code 1892, Acts 1898, sec. 97, p. 29 (this includes railroads), desiring to enjoy any of the privileges taxed by law, shall first pay the tax as prescribed to the collector of taxes of the county, and obtain from him the license herein required, etc.

This requires the railroad company, just as any other person, to apply to the tax collector for a license. When this application to the tax collector is made for license, the act of 1898, sec. 105, p. 32, requires "that the tax collector shall require every applicant for license to carry on any business on which is imposed a privilege tax in proportion to the stock of merchandise, *or other variable circumstance,* to make affidavit on (of) the basis on which he seeks such license," etc.

The *modus operandi* prescribed by the statute for license to the Y. & M. V. R. R. Co., would be this: Application would be made to the tax collector of Hinds county, and every other county through which the road runs, by Y. & M. V. R. R. Co., for a license to operate a railroad through the county, for so many miles, as a railroad, claiming an exemption under the maximum and minimum provisions in the charter. This application by the person would be sworn to, under section 105, and thus the "other variable circumstance," viz., mileage in county, and for a railroad claiming exemption, would be made the *basis* of the license. Upon the statement of the applicant, sworn to, the several tax collectors act, and this is the *only* information or data prescribed by law for them to have and to act on in granting the privilege license. It is, especially, to be noted that the railroad commission is not required by sec. 66, act 1898, p. 23, to fix or assess any mileage for any county, but this, as stated, must be set up in the applicant's affidavit to the tax collector of the county for license. Upon this application the several tax collectors, each for his own county, issues

a license for that county, upon the general blank privilege tax license forms provided under sec. 100-1-2-3, act 1898, p. 31, for all the various privileges taxed.

By sec. 103, act 1898, p. 32, it is provided: "Any one failing to pay the privileges by this act imposed, *and to obtain license as herein required, but pursuing the business taxed without such license, may be proceeded against by suit,* besides being dealt with criminally," etc. And by sec. 106, p. 33, the tax collector is made liable for failure to call upon and require all persons liable to pay the privilege tax to pay the same, and "the demand required by this section shall not be necessary to render liable the tax payer to the penalty of doing business without paying the tax."

Thus the *duty is imposed upon the person* who desires to enjoy the privileges taxed to first pay the tax and obtain the license, and there is no duty imposed on the tax collector or other officer as a condition precedent to liability for the amount. The failure of the person to pay and to obtain license and pursuing the business taxed is the express statutory predicate of liability.

Turning, then, to the particular provisions of the act of 1898, p. 23, as to this additional privilege tax on each railroad claiming exemption under maximum and minimum provisions, we may ask wherein does this particular provision change these general provisions and machinery for the collection of this privilege tax hereinbefore set forth?

It will be noted that there is a specific "additional" tax of $10 per mile, *levied by the act.* There is no graduation of the amount of the tax provided for. Hence *all* railroads claiming the maximum, etc., provisions must pay the $10 per mile to the several tax collectors of the several counties in each county. This $10 per mile is levied "on each railroad claiming exemptions," etc., whether first-class, or second-class, or third-class, or narrow-guage.

The fact of "claiming exemption" makes the occupation or privilege tax due. As shown, this fact of claiming exemption, "other variable circumstance," is to be stated in the affidavit of the applicant for license, just as "other variable circumstance" is stated in every other privilege tax application to the tax collector. Upon this statement in the application for the license every element provided for by the statute is present, viz., "a railroad, so many miles long in the county, claiming exemption," etc., must pay $10 per mile. Thus an assessment or classification by the railroad commission, if provided for, would not be a necessary condition for ascertaining the amount of the tax, for its collection is provided for as shown by the other provisions of the act. It would be superfluous, if required; and its existence as a condition of liability is dispensed with by the language of the act creating the right to sue.

The predicate of liability for this privilege tax is the reverse of liability for *ad valorem* taxes. Here *the person* desiring to enjoy the privilege must take every step to obtain it, and if he fails to do so, then he is liable. With *ad valorem* taxation the proceeding is *in invitum* by the State, through its assessors, to subject by a judicial proceeding, the property to taxation. In the former, the responsibility for the failure to perform all necessary steps and obtain license falls upon the person exercising the privilege without payment; on the latter the responsibility for failure to take the necessary steps to impose the tax falls upon the state.

Argued orally by *E. J. Bowers, R. H. Thompson,* and *Edward Mayes,* for appellants, and by *Garner W. Green* and *Marcellus Green,* for appellees.

WHITFIELD, C. J., delivered the opinion of the court.

The act of the legislature (Laws 1898, p. 23, c. 5, sec. 1) provides "that a privilege tax is levied as follows on the following

industries carried on in this state, to-wit." Section 66 provides:

"Railroads. Railroads are divided into four classes, first, second, third, and narrow-guage, and privilege taxes are levied on them as follows: On each railroad of the first-class per mile $20. On second-class, per mile, $15. On third-class, per mile, $10. On narrow-guage, per mile, $2. On each railroad claiming exemption from state supervision under maximum and minimum provisions in their charter, an additional privilege tax per mile, $10.

"Same. The railroad commission shall annually, on or before the first Monday of August, classify the several railroads according to such charter exemption claims and the gross earnings of each, and the privilege taxes thereon shall be paid on or before the first day of December, and the findings of the railroad commission shall be certified to the auditor of public accounts, and the chancery clerks of the counties through which each road runs."

It must be noted that the acts of 1896 (Laws 1896, p. 44, c. 35) is identical with said section 66 of the act of 1898, except that the act of 1896 requires the railroad commission to classify the several railroads simply according to the gross earnings of each, whereas the act of 1898 requires the classification to be made "according to such charter exemption claims and the gross earnings of each." This amendment plainly requires the railroad commission to look to two factors, in accordance with which the classification is to be made: First, such charter exemption claims; second, the gross earnings of each railroad. The declaration in these cases does not aver that a classification was made in accordance with the provisions of the act of 1898 in this respect.

After the most mature consideration we are constrained to hold that it was a condition precedent to the right to collect the privilege taxes, here sued for, that the railroad commission

should have made such classification, and should have certified such classification "the the auditor of public accounts and the chancery clerks of the counties through which each road runs." And the failure to so classify is made the fourth ground of the demurrer to the declaration. There is no escape from the conclusion, made manifest by the amendment referred to, that the classification has to be made with reference as well to such charter exemption claims as to such gross earnings. If it be conceded that the act levies the tax, it still remains true that something more was necessary, to wit, the classification referred to. The railroad commission, we think, should have classified the railroads into first, second, third, and narrow-guage railroads, and also described such railroads with reference to such charter exemptions, and to have certified which of the roads claim the charter exemption referred to, so that their certification might manifest the amount of the privilege taxes to be collected from each railroad.

It is very strongly argued, upon the other side, that this tax could be collected whether there had been any classification or not, that the act itself levied the tax, that the railroad company was required to be the actor in securing its privilege license, and that the liability for these taxes was independent of any classification having reference to such charter exemption claims. But we are forbidden, it seems to us, to adopt this construction by the plain language of the act of 1898. It was very easy for the legislature, if it so intended, to have provided that railroads having charters granting immunity from state supervision should pay an additional privilege tax of $10 per mile, without requiring the railroad commission, in making its classification, to take as one of the factors in the classification such charter exemption claims. Had the law been so written, the liability of the railroad, so far as classification is concerned, would be clear. But the law is not so written. On the contrary, the legislature was not satisfied to allow the railroad

commission to make the classification looking only to the gross earnings of each railroad, but the amendment of 1898 expressly added, as another factor necessarily to be taken into account by the railroad commission in making the classification, the claims made by the railroads to charter exemption from supervision. It is not possible, in view of this legislation and the plain language of the statute, to escape the conclusion that such classification was, as stated, a condition precedent to liability to these privilege taxes.

There are many other very interesting questions in the record but, in view of the fact that the point considered determines these suits, we do not consider it proper to decide them at this time.

*The judgment is reversed, demurrer sustained, and suits dismissed. This decision disposes of both cases.*