CRAIG, STATE TAX COLLECTOR, *v.* GULF, MOBILE & OHIO R. CO.

(In Banc. Feb. 14, 1944.)

[16 So. (2d) 760. No. 35517.]

Lotterhos, Travis & Dunn, Thos. H. Watkins and Eliza-beth Hulen, all of Jackson, for appellant.

**Flowers, Brown & Hester** and **Robert Burns, Jr.,** all of Jackson, and **J. N. Ogden,** of Mobile, Ala., for appellee.

Argued orally by **Elizabeth Hulen,** for appellant, and by **Robert Burns, Jr.,** for appellee.

**McGehee, J.,** delivered the opinion of the court.

The State Tax Collector, Carl N. Craig, brought this suit against the appellee, G., M. & O. R. Company, to recover privilege taxes for the three months intervening from September 1, 1940, to December 1, 1940, on the theory that such taxes are due and unpaid under the provisions of Chapter 20, Gen. and Loc. and Priv. Laws of Extra Session of 1935, as amended by Chapter 154, Laws of 1936, for the privilege exercised by the appellee of operating a railroad in this state during the period in question over the lines of railway which had been owned and operated by the M. & O. R. Company prior to the first day of September, 1940, the date on which the appellee, G., M. & O. R. Company, began operation in this state under that name as a railroad corporation, when it either became the successor to the G. M. & N. R. Company by amendment of the charter thereof so as to change the name to G. M. & O. R. Company, or otherwise came into existence, the said G. M. & N. R. Company having been theretofore engaged in the operation of lines of railway in this state, and presumably having obtained a privilege license so to do for the period ending December 1, 1940.

The privilege taxes shown to be due under a classification of railroads made by the tax commissioner (Chairman of the State Tax Commission) on August 7, 1939, for the fiscal year beginning December 1, 1939, and ending December 1, 1940, amounting to the sum of $14,515.60, had been paid on an annual basis in advance by the M. & O. R. Company, the former owner of the lines of railway here involved, for the said full fiscal year ending December 1, 1940. The amount of privilege taxes now sued for covering the period from September 1, 1940, to December 1, 1940, is the sum of $5,433.35, including a 50% penalty on the tax, together with interest and costs, and the alleged liability is predicated upon the provision of the statute, Section 3, Chapter 20, Gen. and Loc. and Priv. Laws, Extra Session 1935, which requires that "Every

person desiring to engage in any business, or exercise any privilege hereinafter specified, shall first, before commencing same, apply for, pay for, and procure from the proper officer a privilege license authorizing him to engage in the business, or exercise the privilege specified . . ." Section 176 of the said Act, as amended by Chapter 154, Laws of 1936, imposes a privilege tax "upon each person engaging, or continuing in the business of operating a railroad" and the tax is required to be calculated by the tax commissioner on the basis of so much per mile, graduated from $5 to $90, according to the classification given by said officer to each line or branch of railroad which he is authorized to divide into as many as ten separate classes.

To enable the tax commissioner to make such classification, Section 181 of the Act requires that the taxpayer "shall annually on or before the first day of June in each year, under oath, make and file with the tax commissioner an application upon blanks prescribed and furnished by and in such form as the tax commissioner may prescribe," containing, among other information, a statement of "the entire gross earnings, including all sums earned or charged, whether actually received or not for the next preceding calendar year, or fiscal year, from every source derived, and business done within this state; . . ." And, if a railroad company, "the total number of miles of railroad track operating within and without this state; . . . or total number of miles of railroad over which its business is carried or its cars operated; . . . and such other and further information as the tax commissioner may require."

Section 182 of the said Act of 1935, as amended by Chapter 154 of the Laws of 1936, then provides, among other things, that "The tax commissioner shall annually on the first Monday in July, or as soon thereafter as is practicable, but not later than the first Monday in August of each year, classify the several railroads, and the branches thereof, operating through this state, in propor-

tion to the gross earnings or volume of business of each, into ten classes, numbered consecutively from one to ten.''

It is alleged in the declaration and shown by an exhibit thereto that such classification of the lines of railway belonging to the M. & O. R. Company was made by the tax commissioner on August 7, 1939, as aforesaid, within the time required by law, and that the main line was placed in Class 5, the mileage thereof stated, the rate per mile declared and the total amount of tax specified, and that the Starkville and Aberdeen branches, respectively, were placed in Class 9, and the same procedure followed, and that this was likewise true as to the Montgomery branch which was placed in Class 7, the applicable rate being $50 per mile on the main line, $10 per mile on the Starkville and Aberdeen branches, respectively, and $30 per mile on the Montgomery branch, making the total amount of privilege taxes charged against the M. & O. R. Company the said sum of $14,515.60.

Said Section 182, as amended, also provides for the classifications to be entered in a suitable book which ''shall remain open and subject to objections thereto, if any, which must be filed in writing by the taxpayers, for a period of thirty days.'' Said section also provides that ''It shall be the duty of the tax commissioner to hear and determine all objections filed, and he may make such corrections in his determination, classification, findings, or order, as he may deem proper, and his decision in the matter shall be final, except as to the right of such order, or findings to be reviewed by a court of competent jurisdiction.''

Presumably, the M. & O. R. Company was accorded the rights of a hearing as above vouchsafed to it, and as was recited in the order of the tax commissioner should be done when he made the classification shown as an exhibit to the declaration, since it paid the tax of $14,515.-60 on the classifications as made by the tax commissioner for the full year. But it is not alleged in the declaration, to which the demurrer of the appellee was sustained by

the court below, that when the G. M. & O. R. Company acquired the said properties from the M. & O. R. Company on September 1, 1940, any further information was furnished by the purchaser or required by the tax commissioner as a basis for a reclassification of the properties, predicated upon the gross earnings and total number of miles of track operated within and without the state by the G. M. & O. R. Company as successor of the G. M. & N. R. Company. Nor did the new railroad company make any application in that behalf, although the order of the tax commissioner, making the classifications of railroads on August 7, 1939, and which of course did not list the new company, reserves the right "to determine and assess privilege taxes against any person, firm or company not having made an application, or not named in this order." It is fair, just and legal to presume that the failure of the tax commissioner to require such information on September 1, 1940, and to "determine and assess privilege taxes" against the G. M. & O. R. Company for the privilege of operating a railroad business over the lines purchased on that date from the M. & O. R. Company, was due to the fact that the privilege taxes based upon the classification of said properties had been paid to him in full for the fiscal year ending on December 1, 1940, based on the gross earnings and total number of miles of railroad operated by the M. & O. R. Company "within and without the state" for the preceding calendar or fiscal year; that likewise the failure of the G. M. & O. R. Company to apply for, pay for, and procure a license to operate said properties from September 1st to December 1st of said year was due to the same consideration, since Section 247 of the Act provides that "all persons liable for privilege taxes who shall fail to procure the license therefor before beginning the business for which the tax is required by this act, . . . shall in each . . . instance be liable for the amount of the tax required for such business and fifty percentum thereof," as a penalty, and "shall be guilty of a misdemeanor." And Section

263 of the Act provides, among other things, that in such event "the officer required to collect the tax may seize and sell any property of such person liable for such tax and penalty in the same manner as he may distrain and sell property of other taxpayers . . . for the payment of ad valorem taxes due on personal property." Moreover, this latter provision in regard to seizing and selling "any property . . . liable for such tax and penalty," would suggest that if the order of the tax commissioner of August 7, 1939, classifying the properties of the M. & O. R. Company and stating the amount of taxes to be due, was final for the year so as to constitute a lien on the specific lines of railway involved, then the lien thereby created was discharged by the payment in advance by the M. & O. R. Company of the $14,515.60 demanded under such classification. And if it can be said that the operation of the railroad begun on September 1, 1940, by the G. M. & O. R. Company and continued until the end of the taxable year on December 1, 1940, had the effect of creating a new demand and giving rise to another lien on the properties, then the question presented for decision is whether any further action on the part of the taxing authority was necessary to create such liability in view of the fact that the tax in question is a state-wide privilege tax to be determined in amount by a classification of property based upon certain factors set forth in the statute, as distinguished from the ordinary privilege taxes where the amount is definitely fixed by the statute itself without the necessity for the exercise of any judgment or discretion on the part of the officer charged with the duty of collecting the same.

It should be observed that there is no provision in the act for such classifications of the railroads to be made except annually on the first Monday in July or not later than the first Monday in August of each year; nor does the statute, by its terms, either require or permit a reclassification at any time during the fiscal year in the event a new and different railroad company shall in the

meantime take over the operation of the lines of railway involved. It is provided, however, by Section 183 of the Act that "if at any time any person liable for a tax under the nine next preceding sections (which pertain to public utilities alone and include the section imposing the tax on railroads), shall increase its classifications so as to require the payment of an additional tax, or shall begin business or construct, or operate additional taxable units, application shall be made to the tax commissioner for additional privilege license, and *upon the determination by the tax commissioner of the amount of the tax due,* shall pay the same." (Italics ours.) And this section further provides that "the tax commissioner shall issue such privilege license to expire on December first following, and shall collect the pro rata annual tax according to the number of months between the date of liability and December first following," whereas all ordinary privilege taxes not based on such classifications are issued for a full year from the time the taxpayer begins operating the business, except as provided in Section 245 of the Act where a person already engaged in two or more businesses desires to have his privilege licenses expire on a common date, and which section, by its express terms, does not apply to "any person beginning business."

In order to determine therefore whether said Section 183, the only one that could be applicable, would apply to the facts of the instant case so as to have required the filing of an application by the G. M. & O. R. Company and the determination by the tax commissioner of the amount of tax due by it on September 1, 1940, it was necessary that the tax commissioner should first find that at least one of the following conditions existed: (a) that the said railroad corporation, if acting as successor to the G. M. & N. R. Company by a change in its corporate name due to amendment of charter, had "increased its classifications so as to require the payment of an additional tax," where the classifications given by the tax commissioner on August 7, 1939, to the respective main

lines and branches of both the G. M. & N. Railroad and the M. & O. Railroad had remained the same throughout the fiscal year ending on December 1, 1940,—a condition which would appear not "to require the payment of an additional tax" to that already paid in advance thereon, unless the term "increase of its classifications" has reference to the number of lines and branches of railroad, since there had been no transfer of any of the lines or properties from one numbered class to another at that time, their classifications having been determined on the basis of data applicable to the preceding year as aforesaid, and which obviously remained unchanged; (b) that the G. M. & O. R. Company had first begun the operation of business as a separate and distinct corporate entity, instead of as successor in name only to the G. M. & N. R. Company, on September 1, 1940, and which said G. M. & O. R. Company, if a new corporate entity, would then have been without gross earnings for the preceding year upon which the tax commissioner could make a classification of such new railroad, separate and apart from the classifications already given the specific lines of railway theretofore operated by the G. M. & N. and M. & O. Railroads, respectively, as had been required by said Section 182 of the Act under consideration, and on which classifications the tax for the year had been paid in full as aforesaid; and (c) that the G. M. & O. R. Company had constructed and was beginning to "operate additional taxable units" on September 1, 1940. And this determination by the tax commissioner would have involved the question of whether or not, as applied to railroads and other public utilities so required to be classified for taxation, the term "additional taxable units" has reference to the bringing into being of new units not theretofore taken into consideration in fixing the amount of the privilege tax due for the year involved, instead of units already classified for taxation purposes, under the provisions of the preceding section, prior to the commencement of the fiscal year. And on these units the

taxes charged thereto in the annual order made by the tax commissioner had been paid in advance as aforesaid for the period contemplated in said Section 183 of the Act for the payment of pro rata taxes.

At any rate, and without regard to what conclusion the tax commissioner should reach as to the existence of any of the factors above enumerated under (a), (b) and (c) of the foregoing paragraph, the fact remains that if the tax is of such nature as to make the privilege license issued to the M. & O. R. Company a personal privilege to the taxpayer named therein to conduct the business specified in the license, which is not transferable to any other person, as provided in Section 249 of the Act, then it is also true that the same is a statewide privilege license, and that the tax, as applied to a taxpayer having "increase[d] its classifications," or which "shall begin business" or shall "construct, or operate additional taxable units" at any time during the fiscal year, is not required by any specific provision of the Act, or by its general terms, to be paid pro rata for the number of months transpiring between such change or occurrence and December first following, except "upon the determination by the tax commissioner of the amount of the tax due," as is expressly so provided in said Section 183 of the Act in question.

It is also provided in Section 249, supra, that "no change in the name of the firm, nor the taking in of a new partner, nor the withdrawal of one or more members of the firm, shall be considered as commencing business; but if any one or more of the partners remain in the firm, the business shall be regarded as continuing." If, therefore, Smith and Brown are partners in a mercantile business and should take into the firm as a new partner Mr. Jones, who is then engaged in business across the street, and the latter should bring along his stock of goods and combine them with those already in the store of Smith and Brown for the operation of the same kind of business under the name of Smith, Jones & Company;

then no additional privilege tax would be required for the period already paid for, unless they should thereupon so enlarge their stock of merchandise that the inventory would be substantially in excess of that on which the privilege licenses theretofore issued to Smith & Brown, and to Jones, respectively, for the year had been calculated. Wherefore, if this conclusion be correct, and if that part of said Section 249 which is last above quoted should apply likewise to public utilities, the change in the name of a railroad company already privileged to carry on the business of operating a railroad in this state would not constitute the beginning of business, nor would the acquisition of additional properties by it on which the tax had been paid according to a classification given them, on what may be likened unto a regular assessment roll, listing each railroad in the state, its main line and branches, the mileage of each line and their classification, the rate of tax per mile that each is to bear as fixed by the statute, and the total tax demand, then appearing in the hands of the tax commissioner, render such company liable for additional privilege taxes. On the other hand, if it be said that the part of said section quoted at the beginning of this paragraph of the opinion has no application to public utilities and pertains only to the conduct of business by private individuals and to engaging in professional occupations, then it cannot be logically contended that the remaining portion of the same section of the Act applies to public utilities and has the effect of declaring that the payment of the privilege taxes charged against the properties of a railroad serves only to confer a personal privilege upon the railroad paying the same to operate the lines of railway involved in the classifications thereof. In other words, there can be no sound basis or legal justification for imposing against such a taxpayer the restrictions contained in a particular section of the Act under consideration while at the same time denying to it the benefits which are in the same section vouchsafed to all in general terms.

The Act now under consideration contains approximately 250 sections dealing with the imposition of privilege taxes on the right to transact.the various businesses therein mentioned, and no formal assessment of these taxes by the collecting officers is necessary as a general rule, except where it is required by the statute, as in cases where certain data is to be ascertained as a basis for the classification on which the amount is to be computed. Therefore neither the decided cases relating to the right to collect ordinary privilege taxes without a formal assessment against the particular taxpayer, nor those holding that a formal act of assessment is necessary to create liability for a property tax, in the strict sense of that term, are controlling in the solution of the ·question here presented. Neither do we find the solution of the question here in the case of Craig v. C. & G. R. Co., 192 Miss. 461, 5 So. (2d) 681; nor in Craig v. Southern Natural Gas Company, 193 Miss. 76, 8 So. (2d) 230, due to the difference in factual circumstances involved.

Whether the action of the tax commissioner under Section 182 of the Act, as amended, be deemed an "assessment" or merely a "classification" of the railroads for privilege tax purposes, the fact remains that he must annually determine to what class the main line and the several branches of the railroad should be respectively assigned, and the mileage of each, based upon such information as may be furnished by the railroad corporation in its application for the license "and such other and further information as [he] may required," in order that he may apply the amount of tax per mile as fixed by the legislature on each of the several classes and determine the total amount of tax due, as a condition precedent to the collection thereof. The case of Gulf & S. I. R. Company v. Adams, State Revenue Agent, 83 Miss. 306, 36 So. 144, involving the application of a statute providing for the classification of the railroads into four classes by the Railroad Commission for the collection of privilege taxes, which the court distin-

guished from ordinary privilege taxes which do not need to be assessed because that is always done by the legislature, has so decided.

It seems, therefore, that the ultimate questions to be determined are (1) whether or not the classifications given the M. & O. Railroad, if personal to it and made after an opportunity was afforded for a hearing, can be invoked as an assessment or classification against the appellee, G. M. & O. R. Company, without further affirmative action by the tax commissioner, in view of what we have already said in our discussion of the various sections of the Act under consideration; and (2) whether or not, since the classification of the M. & O. Railroad was not of the corporate entity as a whole but of its properties which alone could be divided into classes, the legislature ever intended that the state should again collect a tax for the period in question on a classification of the same properties for the privilege of operating a railroad over the same, where the privilege of using the lines for the operation of a railroad throughout such period had already been paid for, and where the new operator was otherwise already entitled to engage in the operation of its own lines of railway in this state under licenses theretofore acquired, without violating either the letter or the spirit of the law which requires ''every person desiring to engage in any business, or exercise any privilege hereinafter specified (including the operation of a railroad), shall first, before commencing same, apply for, pay for, and procure from the proper officer a privilege license authorizing him to engage in the business.'' We are of the opinion that since the tax here involved had already been paid by the M. & O. R. Company on the classification which afforded the basis of the demand therefor, as well as the amount thereof, all doubt as to liability for its payment again under the circumstances herein disclosed should be resolved in favor of the taxpayer, and that the two questions above stated should be answered in the negative; that is to say, the judgment

of the court below sustaining the demurrer of the appellee to the appellant's declaration should be affirmed.
Affirmed.

**Anderson, J.,** took no part in this decision.

**Smith, C. J.,** is of the opinion that the appellee is liable for the tax which the appellant here seeks to collect and that the court below should have overruled the demurrer to the appellant's declaration.