WINTER, STATE TAX COLLECTOR *v*. NASH, d.b.a. NASH FINANCE COMPANY, LTD., et al.

No. 42446          December 10, 1962          147 So. 2d 507

*Pyles & Tucker,* Jackson, for appellant.

*McClendon & McClendon,* Jackson, for appellee and cross-appellant.

*Watkins & Eager,* Jackson, Amicus Curiae.

GILLESPIE, J.

William Winter, State Tax Collector, appellant, was complainant below. Suit was instituted in the Chancery Court of Hinds County against J. G. Nash, d/b/a Nash Finance Company, Ltd., and others. There were attachment features of the suit about which there is no controversy here. The suit sought recovery of privilege taxes and penalties for the years 1956 and 1957 as follows: $400 plus penalty for each year under Section 9696-134, Miss. Code 1942, which levies a privilege tax of $400 on money lenders commonly known as industrial loan companies or industrial bankers; $2,000 plus penalty for each year under Section 9696-135, Miss. Code 1942, which levies a privilege tax of $2,000 upon each person doing a money lending business where a greater rate of interest than fifteen per cent per annum is charged; a state privilege tax of $2,000 under Sec. 5586, Miss. Code 1942, which levies a state privilege tax on all persons doing a money lending business where a greater rate of interest than twenty per cent per annum is charged.

The trial court overruled demurrers of the defendant and an interlocutory appeal was allowed, which this Court dismissed as being improvidently granted. Nash v. Winter, State Tax Collector, 235 Miss. 330, 109 So. 2d 336.

After a full hearing on the merits, the trial court dismissed the bill of complaint and complainants appealed to this Court. Defendants cross-appealed.

On November 6, 1957, the attorney for the State Tax Collector gave written notice to appellee, J. G. Nash, d/b/a Nash Finance Co., Ltd., demanding the privilege taxes and penalties mentioned above. The next day, November 7, 1957, this suit was filed. The only privilege tax that appellee had paid for the years in question was that levied by Code Sec. 9696-115, which levies a $50 privilege tax on loan brokers engaged in the business of procuring or negotiating loans through industrial loan companies.

In a written opinion the chancellor found as a fact that appellee was operating during the time involved in this suit as a money lender charging a greater rate of interest than twenty per cent per annum, but denied recovery of the privilege tax levied by Code Sec. 9696-135 on the ground there had been no assessment or other proceedings provided by Sec. 9696-208. The court found that the proof failed to sustain the averments that the appellee was operating as an industrial loan company within the meaning of Code Sec. 9696-134.

The principal question of law for decision is whether the State Tax Collector could sue for the recovery of the privilege taxes levied by Code Secs. 9696-134 and 9696-135 without first assessing the privilege tax and proceeding under Code Sec. 9696-208. We hold that the privilege taxes levied under the two code sections just cited requires no assessment or other proceedings prior to bringing suit for the collection thereof under the facts shown by this record. The local privilege tax code is contained in Division 2, Vol. 7, Miss. Code 1942, Recompiled, and includes Code Secs. 9696-01 to Sec. 9696-236. The privilege taxes are imposed by Sec. 9696-03, which requires that every person desiring to engage in any business within a municipality which has

adopted this privilege tax code shall apply for, pay for, and procure from the tax collector of the municipality a privilege license authorizing him to engage in the business. This section requires that said privilege tax shall be paid and the privilege license obtained before commencing business.

Sec. 9696-208 provides for the issuance to the taxpayer of a privilege license according to the application and then provides as follows:

"If, however, such officer, shall, before issuing the said license, or at any time thereafter, have reason to believe that the statements of the business contained in the application are incorrect or false in any material particular, the said officer shall duly notify the applicant wherein the supposed discrepancy lies, and he is hereby empowered to require the applicant to render such other information as will enable him to determine the proper tax due. After making such determination of the proper tax due, if the license has not been issued, such officer shall forthwith proceed to collect the amount of tax due; and if the license shall have been issued under the original application, he shall collect the difference between the sum shown to be properly due, and the sum paid with the original application, and shall issue an additional license therefor which shall expire at the same time as the original. If the additional tax is paid within thirty days after the determination by the officer of the proper amount due, no penalty shall be applied. If the taxpayer shall wilfully fail or refuse to furnish the information requested by such officer, he shall be liable for damages as in other cases of payment of an insufficient privilege tax, and may be proceeded against civily or criminally as otherwise provided herein, and shall suffer the penalties provided herein therefor."

The above quoted Sec. 9696-208 has no application to the case at bar. That section only provides for proceedings to collect an *additional tax* where the ap-

plication is incorrect or false in a material particular. It presupposes that an application for the particular type of business has been filed. In the case at bar appellee has not filed any application under Sec. 9696-134 or Sec. 9696-135. Appellee had sought and obtained a license for a loan broker, not for a money lender.

In Bailey, State Tax Collector v. Emmich, 204 Miss. 666, 37 So. 2d 797, the Court held that the State Tax Collector had no authority to collect local privilege taxes. That decision was overturned by the enactment of Chap. 535, Laws of 1950, specifically granting to the State Tax Collector the power and authority to proceed by suit to collect any privilege tax remaining delinquent and unpaid for a period of thirty days or more, and giving the State Tax Collector the power to make any and all assessments that might be required or necessary. The *Emmich* case is also authority for the proposition that where an assessment is necessary, the suit may not be brought where no assessment has been made and that the debt or obligation based on a privilege tax does not accrue until an assessment has been made. In *Emmich* the taxpayer was operating a store and the tax sought to be collected in that suit was an additional assessment. Emmich Brothers had applied for and paid a tax but it was claimed they had not paid on the correct valuation of the stock of goods.

In Craig, State Tax Collector v. Gulf, Mobile & Ohio R. Company, 196 Miss. 172, 16 So. 2d 760, it was held that the State Tax Collector could not recover a statewide privilege tax on railroads because there had been no assessment as required by the statute levying the tax. The tax in that case was a graduated tax on a mile basis in accordance with a classification scheme.

None of the cases cited or relied on by appellees apply to the particular situation under consideration. In Gulf, Mobile & Ohio R. Co. case the Court recognized the distinction between the privilege tax to be determined in

amount by a classification or assessment based on certain factors set forth in the statute and the "ordinary privilege taxes where the amount is definitely fixed by the statute itself without the necessity for the exercise of any judgment or discretion on the part of the officer charged with the duty of collecting the same."

The local privilege tax code above referred to has 236 sections. A large number of these sections require assessment by classification or valuation before the amount of the tax can be ascertained by the officer. Sec. 9696-178, for instance, is a lengthy statute levying a privilege tax on stores, wholesale or retail, and provides for a graduated privilege tax with 29 classifications depending on the value of the stock of goods, with the privilege taxes ranging from $2.50 for a stock of goods never exceeding $1,000, to $1850 where the stock of goods never exceeds $450,000. The privilege tax levied on sawmills by Sec. 9696-165 is graduated from $5.00 where the mill has a daily capacity of less than 7500 board feet to $1520 where the mill has a daily capacity of 450,000 board feet. Other sections provide for a graduated tax depending on capacity, output, valuation, etc. The same is true of the statewide privilege tax code, many sections of which require classification or assessments before the amount of the tax can be ascertained. On the other hand, many of the sections in the local privilege tax code, including Secs. 9696-134 and 135, neither provide for a graduated tax nor for an assessment or classification by the tax collecting officer in order to determine the amount of the tax.

Sec. 9696-134 is as follows: "Money lenders. — Each person engaged in this state in the business of making loans of money on personal or other securities, of selling and negotiating written evidences of debt for the payment of money either fixed or uncertain, and receiving payment therefor in installments or otherwise, and commonly known as 'industrial loan companies,' 'industrial

banks,' 'Morgan Plan Company,' and 'Morris Plan Company,' or similar designations other than national or state banks and building and loan associations, shall be deemed to be operating an industrial loan business within the provisions of this section.

"Upon each person operating an industrial loan business as defined herein, the following tax:

"In municipalities of class 1 _____$400.00
"In municipalities of class 2 _____$300.00
"In municipalities of classes 3, 4, and 5 _____$200.00
"In municipalities of classes 6, 7, and
    elsewhere in the county _____$ 75.00."

The City of Jackson is a class 1 municipality and has adopted the privilege tax code.

Section 9696-135 is as follows: "Money lenders who charge more than fifteen per cent. — Upon each person doing a money lending business where a greater rate of interest than fifteen per cent (15%) per annum is charged, whether the loan is secured or unsecured, or whether by taking bills of sale, absolute or conditional _____$2,000.00."

■■ These sections do not provide for a graduated tax. Each is independent of the other. The greater tax provided for in Sec. 9696-135 is not inclusive of the smaller tax provided for in Sec. 9696-134. In each case the statute fixes the amount and no assessment is required. Whether appellee was engaged in the business taxed under Sec. 9696-134 is a question of fact just as it is a question of fact whether one is practicing law and liable for the lawyer's privilege tax. But in neither case is it a matter for the exercise of discretion or valuation. The same is true as to Sec. 9696-135. It may be a more complex question of fact whether appellee was engaged in lending money at a greater rate of interest than fifteen per cent than it would be to determine whether

one was engaged in the business of selling soft drinks, but the principle is the same and the amount of the tax is levied by the statute in either event.

We hold that there was no requirement for any assessment before the State Tax Collector could file suit for the privilege taxes levied by Secs. 9696-134 and 135. Nor was it necessary to proceed under Section 9696-208. We also hold that Sec. 9696-226 does not apply to the question under consideration. The essential feature of that section is to make officers liable where they fail to collect the proper privilege tax.

The cross-appeal raises the question whether the chancellor was justified in finding that appellee was doing business as a money lender charging a greater rate of interest than fifteen per cent per annum. The proof was sufficient to justify the chancellor in finding that appellee was not in fact a broker but was a money lender charging more than twenty per cent per annum interest. The proof is equally as strong on behalf of the appellant as it was for the State Tax Collector in the case of Alt v. Bailey, State Tax Collector, 211 Miss. 547, 52 So. 2d 283. It is the contention of appellee that he was a loan broker making loans for a corporation domiciled in Meridian, and that he made no loans for his own account. The testimony of a number of borrowers and the former manager of appellee justified a finding that a typical transaction was as testified by Garfield Hayes, one of the witnesses who borrowed from appellee. Hayes testified he went to the office of appellee and stayed just a few minutes, long enough to sign the papers. He got a loan of $30. He was required to pay back $6.50 per payment for eight payments, due every other week, or a total of $52.00. The chancellor was fully justified in finding this was a direct loan and that the papers, including an agreement to pay a brokerage fee for arranging the loan, the note payable to the Meridian corporation, and the application for the loan were

mere subterfuges, as held in the *Alt* case. The proof further showed that interest rates on these transactions usually exceeded 300 per cent and none less than 200 per cent, and that what was claimed as a brokerage fee was in fact interest.

██ ██ The cross-appeal also raises the question whether J. R. Winett, who was the manager for appellee at all times involved in this suit, was properly called as an adverse witness by appellant. We do not base our decision on the application of Sec. 1710, Miss. Code 1942, but on the proposition that the chancellor had considerable discretion in this matter. We find he did not abuse this discretion. It was shown that appellee lived in Alabama and when his deposition was taken he knew very little about the facts of this lawsuit. It developed that the witness Winett was the manager for appellee and was the alter ego of appellee in connection with the operation of the business in question. It further developed in the cross-examination of Winett that he gave out as little information as he could to counsel for appellant. Under the circumstances no injustice resulted from the chancellor's action. ██ ██ While Code Sec. 1710 expressly authorizes the cross-examination of an opposite party in open court, that section does not attempt to limit the inherent power of the court in regard to the manner in which witnesses may be examined in its search for the truth. We hold, therefore, that the chancellor committed no reversible error in this regard.

██ ██ The direct appeal raises the question whether the chancellor was manifestly wrong in finding as a fact that appellee was not engaged in the business of making loans of money under Code Sec. 9696-134. The facts established beyond any question that appellee was engaged in the business of making loans and receiving payment therefor in installments and it seems clear to us that he was a money lender within the purview of said section. We therefore hold that the chancellor was

manifestly wrong in his finding in this regard and that the tax levied by said section is due for the years in question.

On direct appeal, the question arises of whether appellee was taxable under Sec. 5586, Miss. Code 1942. We hold that this section has been repealed. Code Section 5586 is as follows:

"All persons, firms, or corporations doing a money lending business, where a greater rate of interest than twenty per centum per annum is charged, whether secured or unsecured, or whether by taking bills of sale absolute or conditional, shall pay a privilege tax to the state of $2,000 per annum, but nothing herein shall be construed to validate, or make enforceable, or render lawful any contract for a loan of money at a greater rate of interest than eight per centum."

This statute appeared as Section 1967 of the Miss. Code of 1930. In 1930, by Chap. 88, Laws of 1930, the privilege tax laws were revised, the title of the act being, "An act to revise the privilege tax laws of the State of Mississippi and to repeal all laws in conflict therewith, and to provide penalties." Said privilege tax laws of 1930 were not included in the Code of 1930. Chap. 88, Laws of 1930, consisted of 245 sections, and Sec. 130 thereof provided for a privilege tax of $2,000 upon persons doing a money lending business charging a greater rate of interest than twenty per cent per annum. This was the forerunner of the present Sec. 9696-135 except that in the intervening years the interest rate has been changed from twenty per cent to fifteen per cent. HCR 65, Chap. 285, Laws of 1930, provides that the laws passed by the 1930 legislature shall control in all cases over the same as published in said code.

It is difficult to conceive that the legislature of 1930 intended to exact two privilege taxes of $2,000 on every person engaged in the lending business where a greater rate of interest than twenty per cent per annum is

charged. The compilers of the Code of 1942 evidently were lead to bring forward Sec. 1967 of the 1930 Code as Sec. 5586 of the present code because of the last sentence which provided that the payment of the tax did not render lawful a contract for the loan of money at a greater rate of interest than eight per cent. We hold that Sec. 1967, Code of 1930, was repealed by implication by Chap. 88, Laws of 1930, and that it should not have been included in the Code of 1942. See a dictum in opinion on Suggestion of Error, Bailey, State Tax Collector v. Associates Loan Co., 218 Miss. 512, 67 So. 2d 496.

We reverse the decree and render judgment here for the privilege tax of $2,000 for each of the two years levied under Code Sec. 9696-135, and $400 for each of the two years involved under Code Sec. 9696-134, plus the fifty per cent penalties as provided by the statute. In all other respects the decree of the lower court is affirmed.

Reversed in part and rendered; affirmed in part.

*Lee, P. J., and Ethridge, Rodgers and Jones, JJ.,* concur.