THE WASHINGTON LIFE INSURANCE COMPANY *vs.* THE PATERSON SILK MANUFACTURING COMPANY and others.

1. It is not incumbent on a foreign corporation, complainant, to prove their corporate existence when the answer raises no question as to their existence, or right to sue, but sets up a defence on the merits alone.

2. The unsupported testimony of a defendant seeking to avoid a mortgage debt on the ground of usury, that the broker to whom he applied for the loan which the mortgage was given to secure, told him that he was the agent of the mortgagee, to make loans, cannot affect the mortgagee.

3. A requirement by the lender, (an insurance company,) that the borrower take out a policy of insurance as a condition of making the loan, is not, of itself, evidence of a usurious agreement.

On final hearing on pleadings and proofs.

*Mr. A. S. Boyd*, for complainants.

*Mr. G. S. Hilton*, for defendants.

THE CHANCELLOR.

This suit is brought for the foreclosure and sale of certain mortgaged premises, in Paterson, now owned by the Paterson Silk Manufacturing Company. The complainants' mortgage, which is dated February 2d, 1871, was given to them by John Byard, while he was the owner of the property, to secure the payment of $18,000, with interest. He subsequently sold and conveyed the premises to the Paterson Silk Manufacturing Company, a corporation created by special act of the legislature of this state, subject to the encumbrance of the complainants' mortgage, which, by the deed, the grantees therein assumed to pay, the amount of it being computed and allowed to them as part of the purchase money. On or about the 1st of March, 1873, the silk com-

pany mortgaged the premises to the defendant, John R. Daggers, in trust, to secure bonds to the aggregate amount of $60,000, which they proposed to issue under the authority given them in that year by the legislature. They appear to have issued these bonds only to the amount of $4800, $4000 of which they had, at the time of filing the answers, bought in and cancelled. They and Daggers have answered, setting up usury against the complainants' mortgage, and claiming a deduction, in respect of the alleged usury, of $3049.20, with all interest which may have been paid on the mortgage.

On the argument, it was insisted by the defendants' counsel, that the bill must be dismissed, because the complainants, who are a corporation under the laws of the state of New York, and are there located, offered no evidence of their existence. But, although the complainants sue as a foreign corporation, styling themselves in the bill the Washington Life Insurance Company, of the city of New York, neither of the answers raises any question as to their existence or right to sue, but both of them set up a defence on the merits alone. Under these answers I do not think it was incumbent on the complainants to prove their corporate existence.

The answers allege that Byard, being in straitened circumstances, applied to the complainants' agent, Samuel S. Wood, Jr., in the city of New York, for a loan of $25,000 upon the mortgaged premises, and that it was agreed upon between them that the complainants should lend Byard $18,000, for which, with interest at seven per cent. per annum, he was to give them his mortgage on the mortgaged premises, and to give them a bonus or premium of $2000, and take a policy on his life for $10,000, to be issued by them. They allege that on those terms only was he able to get the money. The answers state that this agreement was executed, and that Byard, accordingly, paid to the complainants the $2000 premium, and took out the life policy, paying to them as the premium therefor, $1049.20, besides a policy fee of $1.

The transaction seems to have been this: Byard being in need of money, and being the owner of a very valuable

factory property in Paterson, applied to Wood, who was an insurance and loan broker, in the city of New York, for a loan of $25,000, on mortgage on his real estate; Wood applied to the complainants for the loan, which they declined. By the advice of Wood, Byard made a new application for a smaller sum, $18,000, and to strengthen it, proposed, by Wood's advice, to take out a policy upon his life for $10,000, from the complainants, and pay the first year's premium out of the money he sought to borrow. This application was successful. It was agreed between Byard and Wood that the latter, if successful in obtaining the loan, should have for his services, including fees for searches and counsel fees in regard to the title, $2000. Byard swears that when the money was paid it was paid by a check for $18,000 to his order, which was delivered by Wood to the attorneys of the complainants, who then, in Wood's presence, obtained Byard's endorsement on it, and that they then, retaining that check, gave Byard their check for the balance, between $14,000 and $15,000, remaining after deducting the premium on the policy and the $2000 commissions. He is undoubtedly mistaken in reference to the manner and time of payment. The complainants' check was payable to the attorneys. The latter appear to have deducted the amount of their bill for searches, &c., $259.08, and the amount of the premium on the life policy, and also the premium on $20,000 of fire insurance, which was to be obtained as collateral to the mortgage, and to have paid over to him by their various checks, dated on the 3d and 4th days of February, 1871, all of the balance, except $1000, which they retained as security that certain unsatisfied liens on the property should be discharged. This money they afterwards paid to him on receiving evidence that those liens had been cancelled. One of those checks for $1740.92 was delivered to Wood. There is no evidence in the cause that Wood was the complainants' agent in this matter, except Byard's testimony. He swears that Wood told him that he was the agent of the complainants to make loans of money. Were this uncontradicted, it cannot, on

obvious principles, standing entirely alone as it does, affect the complainants. *Faulkner* v. *Whitaker*, 3 *Green* 438, 440 ; *Muir* v. *Newark Savings Inst.*, 1 *C. E. Green* 537, 539 ; *Conover* v. *Van Mater*, 3 *C. E. Green* 481. But it is explicitly denied by Wood, who swears that he was in no sense the agent of the complainants in lending the money; that the complainants never received one dollar of the bonus, but that, on the other hand, it was shared by him with those who had been instrumental in bringing Byard to him.

The defendants' counsel, on the hearing, insisted that the complainants imposed on Byard, as terms on which alone the loan would be made, the taking out of a life policy, and that that was intended as a mere cover for usury. It does not appear, however, that the taking out of the policy was a condition. It is probable that it was proposed by Byard himself, as an inducement, and so became part and parcel of the agreement. But if it be admitted that it was a condition of the loan, it is not evidence of a usurious agreement. The policy was taken out at the usual rate, and there is no evidence whatever, that it was designed as a cover for unlawful interest. *Grosvenor* v. *Flax Co.*, 1 *Green's Ch.* 543 ; *Griffin* v. *N. J. Oil Co.*, 3 *Stockt.* 50 ; *Utica Insurance Co.* v. *Caldwell*, 3 *Wend.* 295 ; *New York Fire Ins. Co.* v. *Donaldson*, 3 *Edw.* 199.

The defendants are not entitled to the deduction claimed, or any part of it. There will be a decree for the complainants, in accordance with these views, for the amount of principal and interest due on their mortgage, according to its terms.