C. L. HEABERLIN *et al. v.* THE JEFFERSON STANDARD LIFE INSURANCE CO. *et al.*

(CC 484)

Submitted October 11, 1933. Decided October 17, 1933.

*Ben H. Ashworth* and *David G. Lilly, Jr.,* for plaintiffs.
*McGinnis, Ashworth & Mann,* and *Brown, Jackson & Knight,* for defendants.

WOODS, JUDGE:

This suit was brought in Raleigh County for the purpose of enjoining a sale under a certain deed of trust, and of purging the loan secured thereby of usury. A temporary restraining order was awarded, and upon a hearing on a demurrer to the bill, the chancellor overruled the demurrer and certified his ruling here.

The bill alleges in substance that defendant, Jefferson Standard Life Insurance Company, a foreign corporation, had qualified to do business in this State; that on November 24, 1926, plaintiffs, C. L. Heaberlin and Elizabeth Heaberlin, owners of an apartment house in the city of Beckley, applied to defendant for a $35,000 loan; that they were granted a loan of $27,500, payable in one lump sum, ten years after date, with interest at six per centum, payable semi-annually; that the indebtedness was evidenced by a note payable at the company's home office in North Carolina; that the note was secured by a deed of trust on the apartment property; that before the defendant would make the loan, and in order to acquire an unlawful and usurious rate of interest, it required C. L. Heaberlin to take out a ten-year endowment policy on his life in the amount of the loan, the same being payable on the exact date of the maturity of the note; that the apartment house was, at the time of the loan, and still is, ample security for the amount of the loan; that while the deed of trust did not specify that the endowment policy should be taken with

defendant company, C. L. Heaberlin was required, in fact, to take it out with the company for the purpose of acquiring usurious interest; that the annual premiums of $2,587.20 on said insurance were promptly met until sometime in 1931, at which time upon request defendant permitted the surrender of said policy, and applied a portion of cash surrender value to the principal loan; that in lieu thereof plaintiff was required to take out a life insurance policy; that plaintiffs became and were unable to make the several payments alleged to become due on the ... day of November, 1932; that the plaintiffs are entitled to have all payments made by them, or either of them, as premiums upon said endowment insurance policy and said life insurance policy, and the interest paid by them on said note applied as partial payment on said loan as of the date of making such payments by deducting from each payment, when made, the lawful rate of interest then due on said loan, or the unpaid portion thereof, and the remainder of said payments applied as payment on the principal of said debt, as of the date that said debt becomes due and payable; that the plaintiffs have paid defendant a sum in excess of $22,000 and that defendant still claims $18,000 due; that defendant has in its possession, and assigned to it, the cash surrender value in said policies in a sum exceeding $2,500 and refused to apply said amount to payments alleged to be due in November, 1932; and that, if all payments made had been properly credited, plaintiffs were not in default in the payment under the terms of the trust deed. In addition to an injunction, the bill prayed for a discovery as to the various payments made to defendant company, for an accounting between the parties, that the loan be purged of its usury, and for general relief.

Before dealing with the sufficiency of the bill, we must determine whether or not a requirement that a borrower carry insurance upon his life, and assign the policy to the lender in addition to the security provided by deed of trust, constitutes usury and renders the loan illegal to the extent of the premiums paid upon the policy.

At the outset we are met with two lines of decisions. One holds that such a requirement, as a condition precedent, does not constitute usury, at least where the policy is actually

issued at the same rate and on the same conditions as policies issued to non-borrowers. *Union Cen. L. Ins. Co.* v. *Morrow,* 16 Ohio C. C. 351, 8 Ohio C. D. 419, affirmed without opinion in 61 Ohio St. 661, 57 N. E. 1133; *Union Central L. Ins. Co.* v. *Hilliard,* 63 Ohio St. 478, 59 N. E. 230, reversing 16 Ohio C. C. 434; *John Hancock Mut. L. Ins. Co.* v. *Nichols,* 55 How. Pr. (N. Y.) 393; *Homeopathic Mut. L. Ins. Co.* v. *Crane,* 25 N. J. Eq. 418; *Washington L. Ins. Co.* v. *Paterson Silk Mfg. Co.,* 25 N. J. Eq. 160; *Lane* v. *Washington L. Ins. Co.,* 46 N. J. Eq. 318, 19 A. 618, affirming 46 N. J. Eq. 316, 19 A. 617; *Downes* v. *Green,* 12 Mees. & W. 481, 152 Eng. Reprint 1287; *Edenburgh Life Assur. Co.* v. *Graham,* 19 U. C. Q. B. 581. The other, that.such a requirement renders the transaction usurious. *Moore* v. *Union Mut. L. Ins. Co.,* Fed. Cas. No. 9777; *Missouri Valley L. Ins. Co.* v. *Kittle,* 2 Fed. 113; *National L. Ins. Co.* v. *Harvey,* 7 Fed. 805; *Brower* v. *Life Ins. Co.,* 86 Fed. 748; *Clague* v. *Creditors,* 2 La. 114; *Roberts* v. *Life Ins. Co.,* 118 N. C. 429, 24 S. E. 780; *Miller* v. *L. Ins. Co.,* 118 N. C. 612, 24 S. E. 484; *Carter* v. *Virginia L. Ins. Co.,* 122 N. C. 338, 30 S. E. 341.

In the first Ohio case cited it was held that though the loan and the insurance constituted one transaction in a certain sense, yet, as the company would have been liable on the policy if the insured had died immediately after the policy was issued, the subject-matter of the contract was divisible, and the transaction was not usurious. In the later case, where the borrower was required to take out a policy on the life of a grandson, the court held that the policy was not an unusual one, and since the customary rates of premiums and terms were imposed, the requirement that the policy should be taken out in addition to the charge of legal interest did not make the transaction usurious, even.if the borrower was considered as not having an insurable interest in the grandson's life.

In the case of *John Hancock Mut. L. Ins. Co.* v. *Nichols, supra,* the issue was whether insurance as a condition precedent amounted to usury. The New York court there said: ''Assuming, however, that the evidence is sufficient to warrant the inference that the plaintiff refused to make the loan unless the defendant effected the insurance put in evidence by him, I think the transaction was not usurious for two reasons.

(1) The plaintiff gave *quid pro quo* for the premiums received. (2) Whether the insurances would enable it to acquire the mortgage interest on the sum loaned, depended upon the contingency of the assured living for a period long enough to produce that result. It is not unlawful for a lender to refuse to lend to persons who are not his customers. The business of the plaintiff is to make insurance upon lives. It must invest its surplus funds. To confine its loans to its own patrons, is no more than the insisting upon fair reciprocity. There may be cases where the issuing of policies of life insurance is resorted to as a mere shift or device to cover up the real transaction which is an usurious one; but that is not the case here.''

The holdings in the New Jersey cases are of like tenor. However, in *Homeopathic Mut. L. Ins. Co.* v. *Crane, supra,* the bona fides of the transaction seem to have been questioned. In that case, there was some evidence, but not sufficient in the opinion of the court to warrant the conclusion that it was understood and agreed that the policy should not be continued after the payment of the first premium. And in *Washington L. Ins. Co.* v. *Paterson Silk Mfg. Co., supra,* the court found that there was nothing to show that the insurance was designed as a cover for unlawful interest.

The borrower, in *Downes et al.* v. *Green, supra,* was required to take out a policy of insurance upon his life for eight hundred pounds sterling, pay the annual premiums thereon and deposit the policy as collateral security for repayment of the loan of three hundred and fifty pounds sterling, with interest. In that case, Lord Abinger, C. B., said: ''We cannot presume that this agreement was corruptly or unlawfully made, and there is nothing in the plea to show that the intention of the plaintiffs, in requiring the execution of the policy of insurance, was to get more than a legal rate of interest for their money. It appears to me that it is not usurious for an insurance company to take, by way of collateral security for a loan made by them upon a bond, a life policy effected in their own office, to a greater amount than is necessary to secure the payment of the loan. * * * The insurance effected on the life of Frederick Green is for his own benefit, rather than that of the insurance company, who have a risk in proportion to its

amount, and must pay the eight hundred pounds on his death, however soon it may happen. I think, therefore, that this transaction clearly was not usurious, and that the plea is bad.''

Without further comment, it suffices to say that we are of opinion that the reasoning in the cases supporting the first proposition is basically sound; and that one who would attack the bona fides of such transactions must allege and prove that the insurance was taken out for the purpose of exacting usury, rather than that the insurance was a condition precedent to the loan, as the cited cases from North Carolina, Louisiana and the Federal courts seem to hold. It should be noted at this point that in 1915 the legislature of North Carolina overruled the case law in regard to such transactions by providing that the requirement of insurance as a condition precedent to a loan, if the premiums were the same as charged non-borrowers, would not be deemed usury.

In order to set up the offense of usury, the pleader must allege facts sufficient to show an intent on the part of the lender to exact a sum in addition to that permitted by law. The intention of the parties is the main determining factor. *Crim* v. *Post*, 41 W. Va. 397, 23 S. E. 613. If the lender does not intend to take more on a loan than legal interest, the transaction cannot be held to be usurious. *Pfeister* v. *Wheeling Bldg. Asso.*, 19 W. Va. 676. The eminent jurist, Mr. Justice Story, in the case of *United States Bank* v. *Waggener*, 34 U. S. (9 Pet.) 378, 399, 9 L. Ed. 163, said: ''In construing the usury laws, the uniform construction in England has been, and it is equally applicable here, that to constitute usury, within the prohibitions of the law, there must be an intention knowingly to contract for and to take usurious interest; for if neither party intend it, and act bona fide and innocently, the law will not infer a corrupt agreement. Where, indeed, the contract upon its very face, imports usury, as by an express reservation of more than legal interest, the intent is apparent. There is no room for presumption. Where the contract on its face is for legal interest only, there it must be proved that there was some corrupt agreement or device or shift to cover usury, and that it was in the full contemplation of the parties.''

The deed of trust, which was made a part of and attached to the bill, provided for sale thereunder in cases of failure to keep up the insurance as well as the interest on the loan, taxes, etc.

There are two transactions: one, the loan; the other, the insurance. The company extended full consideration for the premiums paid in assuming the insurance risk, and the added benefit to Heaberlin therefore rested upon independent and legal consideration. Certainly, to decree that the transaction is tainted with usury and that the insurance premiums paid by Heaberlin should now be applied to the unpaid principal or interest on the loan, as the bill seeks to have done, would be inequitable, for then the borrower would have received life insurance free since the year 1926.

But, say the plaintiffs, we have alleged that the whole transaction was entered into on the part of the defendant with and for the purpose of exacting usury. To substantiate such an allegation in pleading there must be facts alleged upon which to base such conclusion. There is nothing in the bill to show that the policy was any different from that which would have been accorded to another, not a borrower. There is no allegation that the insurance company anticipated that the borrower would be unable to meet the requirements of the loan. If the company had required a curtailment on the loan each year in an amount equal to the yearly premiums, could the plaintiffs have complained? If the payments were carried through, the plaintiffs on the maturity date would have had a sum sufficient to have paid off the loan. If the party insured had died during the term of the insurance his estate would have profited to the extent of the difference between the $27,500 and the amount of premiums actually paid in. And, again, the allegations in the bill to the effect that plaintiffs have not been given sufficient credit on the paid-up value of the policies do not amount to usury. The elements of usury must exist at the inception of the contract, because a contract which in its inception is unaffected by usury can never be invalidated by any subsequent usurious transaction. 27 R. C. L. 208. The terms of the policies will, of course, be determinative in ascertaining the cash surrender value actually due the insured. Whether or not he has been given full credit therefor may

yet be ascertained before final settlement under sale by the trustee.

The bill fails to set up a case of usury. Therefore, we must reverse the ruling of the chancellor and sustain the demurrer. We so certify.

*Ruling reversed and demurrer sustained.*