WILSON *v.* WHITWORTH.

4-5366                                              125 S. W. 2d 112

Opinion delivered February 13, 1939.

676

C. L. Polk, Jr., and J. R. Long, for appellant.
K. T. Sutton, for appellee.

MEHAFFY, J. This action was instituted by the appellant to recover certain property held under mortgage. On October 31, 1936, the appellee, Melvin E. Whitworth, applied to the appellant to borrow $150. He executed a promissory note for $259.11, and on the same day to secure the payment of said note, he executed a chattel mortgage conveying a Plymouth automobile and certain household goods. He had paid on the note $64.80. Before the appellant would lend the money he required appellee to take a policy of insurance for $3,500, the annual premium on which was $84.07. In addition to this premium, appellee was charged with $3.30 for insurance on his automobile, $4.50 service fee, and $12.24 discount. The insurance premium and other charges added to the $150, amounted to $259.11.

Suit was originally filed in the municipal court. The case was appealed to the circuit court, and the appellee filed an answer charging that the contract was usurious.

Porter Wilson, the lender, testified as to the loan and the charges and the amount paid. It appeared, however, from his testimony that he knew nothing about the facts except what he learned from the record. His agent, Mr. Vollman, made the contract with appellee, but Vollman did not testify. One of the requirements when loans were made was that the applicant take out life insurance, and the insurance must be taken out in the Pyramid Life

Insurance Company. Mr. Wilson, the lender, was an agent for the life insurance company. When Wilson was asked how much he got of the $84.70 premium, appellant objected, and the objection was sustained. The witness answered, however, that he could not see where that would make any difference. When objection was made to this testimony, witness was asked how much Mr. Vollman got of the premium, and the witness answered that that was immaterial and objection was made by appellant's attorney, and was sustained. Mr. Wilson testified, however, that he did not make a loan, unless the applicant took out life insurance. That he let Mr. Whitworth have $150 and took his note for $259.11. It also appears from the evidence that the appellant took out insurance on the automobile included in the mortgage, and this, of course, was charged to appellee. The record does not disclose why Mr. Vollman who made the arrangements with Mr. Whitworth did not testify. While appellant charged $3.30 for automobile insurance, the insurance policy on the automobile was not introduced, and appears to have been missing from the files. When asked what was the meaning of the $12.24 charged as discount, appellant said it was a charge to take care of the loan.

Appellee, Whitworth, testified that the note and mortgage were both blank when he signed them; that he did not understand that he was to pay all the charges or amounts that he is now charged with. He only got $150 and gave a note and mortgage for $259.11. Appellee testified that he did not know what the amount would be when he signed the blank note; that he had paid $64.80 and owed $85.20 which he was willing to pay. When appellee was asked if he had figured the interest to see how much he was charged for the loan, objection was made, and sustained. Witness, also, testified that when he learned the facts he offered the check back and did not want to take the insurance, but that the lender refused to take it back.

Witness was corroborated in his statements about the loan by his father, J. F. Whitworth.

Appellee testified that he worked for the Chicago Mill & Lumber Company in West Helena, where he lived; that he had worked for this company about eight years, and that he received 22 cents an hour; worked on an average from five to eight hours a day. The evidence shows that the appellant made an investigation to learn about appellee's moral character and financial standing, and he, of course, learned these facts.

Each party requested the court to direct a verdict in his favor. The court then directed the jury to find for the defendant, which it did, and judgment was entered for the defendant. The case is here on appeal.

Under our constitution, all contracts for a greater rate of interest than 10 per centum per annum are void as to principal and interest. Article 19, § 13, Constitution of the state of Arkansas.

In this case the appellee desired to borrow $150, and applied to Mr. Wilson, who was in the business of lending money. Mr. Wilson was also agent of the Pyramid Life Insurance Company and required all applicants for loans to take life insurance in his company. Before he would lend $150 to appellee, he required him to take a life insurance policy for $3,500. In addition to this he collected interest and made several other charges and took a note for $259.11, secured by mortgage on personal property. Whitworth, appellee, was earning 22 cents an hour and working on an average of five to eight hours a day. He had been in the employ of the same company for several years.

This court has many times held that collateral contracts entered into contemporaneously with a contract for the lending and borrowing of money, where the collateral agreement is in itself lawful and made in good faith, will not invalidate the contract for the loan of money as usurious, although its effect might be to exact more from the borrower than the sum which would accrue to the lender from a legal rate of interest. But it was recently said, in referring to the above section of the constitution:

"This constitutional inhibition cannot be avoided by any trick or devise, and the courts will closely scrutinize every suspicious transaction in order to ascertain its real nature; and if it appears that the contract is merely one for the loan of money with the intention on the part of the lender to exact more than the lawful rate of interest, the contract will be declared usurious and void." *Hogan* v. *Thompson*, 186 Ark. 497, 54 S. W. 2d 303; *Ellenbogen* v. *Griffey*, 55 Ark. 268, 18 S. W. 126; *Reeve* v. *Ladies' Building Ass'n*, 56 Ark. 335, 19 S. W. 917, 18 L. R. A. 129; *Dickerson -Reed, etc., Co.* v. *Stroupe*, 169 Ark. 277, 275 S. W. 520; *Hershey* v. *Luce*, 56 Ark. 320, 19 S. W. 963, 20 S. W. 6.

The lender in the instant case, of course, knew that a man employed to labor for 22 cents an hour could not possibly earn enough to make a living for his family and pay the premium on $3,500 insurance. The charges that appellee was compelled to pay to get $150 amounted to more than 70 per cent., and as the Kentucky court said: "The statute must be rendered a mere dead letter, or such contracts must be overhaled. In the language of Lord Mansfield on a like occasion, it may be truly said, 'it is impossible to wink so hard as not to see,' what was expected by this contract—that its *end* was more *interest* on the money advanced than the law authorized." *Heytle* v. *Archibald Logan*, 1, A. K. Marsh (Ky.) 529.

It is not necessary for both parties to intend that an unlawful rate of interest shall be charged, but if the lender alone charges or receives more than is lawful, the contract is void. In discussing this question, Judge MITCHELL of the Minnesota Supreme Court, speaking for the court, said:

"There are some loose statements in the text-books, and perhaps some judicial authority, to the effect that to render a contract usurious both parties must be cognizant of the fact constituting usury, and must have a common purpose to evade the law. But it seems to us that it would be contrary both to the language and policy of the usury law to hold any such doctrine, as thus broadly

stated. These laws are enacted to protect the weak and necessitous from oppression. The borrower is not *particeps criminis* with the lender, whatever his knowledge or intention may be. The lender alone is the violator of the law, and against him alone are its penalties enacted. It would be indeed strange if the only party who could violate the law had intentionally done so, and could escape its penalty because by some device or deception he had so deceived the borrower as to conceal from him the fact that he was taking usury." *Lukens* v. *Hazlett*, 37 Minn. 441, 35 S. W. 265.

This court, in an opinion by the late Chief Justice HART, approved the rule announced by the Minnesota Supreme Court and several other courts, and stated: "We are of the opinion that the principles announced in these cases are sound and should control here. Therefore, we think the transaction was merely a colorable device to cover usury and should not be upheld." *Doyle* v. *American Loan Co.*, 185 Ark. 233, 46 S. W. 2d 803.

"This court has uniformly recognized that borrowing and lending money is indispensable to constitute usury; but that, no matter what the form of the contract may be, no device or shift intended to evade the usury laws will be upheld. The court has also recognized that, while an exhorbitant price will not of itself constitute usury, yet it is a circumstance to be considered in determining whether the transaction was a *bona fide* sale of property or was intended for a cover for usury. It has been frequently judicially stated that one of the most usual forms of usury is a pretended sale of goods or other property." *Home Bldg. & Savings Ass'n* v. *Shotwell*, 183 Ark. 750, 38 S. W. 2d 552.

The rules herein announced have been approved by this court many times. *Jones* v. *Phillippe*, 135 Ark. 578, 206 S. W. 40; *Garvin* v. *Linton*, 62 Ark. 370, 35 S. W. 430, 37 S. W. 569.

We think the facts in this case show conclusively that it was the intention of the lender to charge and receive more than the lawful rate of interest. When Mr. Wilson was testifying, he was asked on cross-examina-

tion how much of the insurance premium he received. He said it was immaterial and his attorney objected to the question, which objection was sustained. It must be remembered that Mr. Wilson was the agent of the insurance company, and it is a matter of common knowledge that the agent gets a considerable portion of the first premium on an insurance policy. In this case, however, we do not know the amount, because the lender declined to answer, but the facts are sufficient to show that the lender was charging and was to receive more than the lawful rate of interest.

If there was any question of fact in this case, this was settled by the finding of the trial judge. Where each party requests a peremptory instruction, the finding of the trial court is as binding as the verdict of the jury.

The judgment of the circuit court is affirmed.

SMITH, C. J., and HUMPHREYS, J., concur; SMITH, J., dissents.