WILLIAM WINTER, STATE TAX COLLECTOR *v.*
MURDOCK ACCEPTANCE CORPORATION, et al.

No. 42470          February 11, 1963          149 So. 2d 516

May 20, 1963                                   153 So. 2d 292

*Pyles & Tucker,* Jackson; *Ethridge, Minniece & Bordeaux, Lawrence W. Rabb,* Meridian; *Jesse P. Stennis,* Macon, for appellant.

*Watkins & Eager, Elizabeth Hulen, George F. Wood-liff,* Jackson, for appellee.

GILLESPIE, J.

The State Tax Collector sued Murdock Acceptance Corporation for certain privilege taxes alleged to be due the Cities of Jackson, Meridian, Tupelo, Columbus, and the Counties of Hinds, Lauderdale, Lee and Lowndes, and the State of Mississippi, for the years 1951 to 1958. The privilege taxes sought to be recovered are those levied by Sec. 9696-134, Code 1942, on money lenders as therein defined, Sec. 9696-135 which levies a $2,000 tax for doing a money lending business where a greater rate of interest than fifteen percent is charged, and Sec. 5586, which levies a $2,000 annual privilege tax for engaging in money lending business where a greater rate of interest than twenty percent is charged. After a lengthy hearing, the chancellor found that no tax was due and dismissed the original bill.

The method employed by appellee in doing business was testified to by various witnesses and twenty-nine individual loans were inquired into in detail.

Appellee, Murdock Acceptance Corporation, is a Tennessee corporation engaged in the business of lending money secured by deeds of trust and mortgages on tangible personal property, and of acquiring notes, trust receipts, conditional sales contracts, etc., secured by liens upon automobiles and other tangible property. All of the loans made by appellee were payable in installments and varied in amount from $150 to $8,200. They were secured by liens on automobiles, trucks, equipment, and furniture. The rate of interest on twenty-one of the loans was less than eight percent per annum; on six, between eight and ten percent per annum; and on two, the rate of interest was 10.32. The potential yield on six of the loans was between fifteen and eighteen percent per annum, and on all the others below fifteen percent.

Murdock owns all of the stock in Universal Security Insurance Company, a Tennessee corporation. Universal writes automobile, fire, theft and comprehensive and collision insurance, and is licensed in the State of Mississippi for automobile physical damage insurance only.

Murdock owns all of the stock in Continental American Life Insurance Company, a Mississippi corporation. This company writes credit life and credit accident and health policies.

Murdock also owns all of the stock in General Insurance Agency of Jackson, a Mississippi corporation, an agency which occupies desk space in the place of business of Murdock at Jackson. General Insurance Agency is agent for both Universal and Continental.

John E. Murdock is president of Murdock and all three of the insurance companies.

It was customary practice for Murdock to require of its borrowers property damage insurance on the security such as an automobile, also credit life and credit health and accident, and to place such insurance with these wholly owned subsidiaries. The insurance was written

by the General Insurance Agency for Universal and Continental.

When fire insurance was necessary on any item held as security this was placed with Central National Insurance Company of Omaha.

Murdock also carried a group insurance policy with Lloyds of London, which was a policy insuring against loss for failure to record an instrument and an arbitrary sum of $2.00 was charged each borrower either to become insured under this policy or to record the instrument.

I.

(Hn 1) Appellant contends that the manner in which appellee required its borrowers to purchase property damage insurance, credit life, and credit accident and health insurance in connection with making loans and the placing of the insurance in companies wholly owned by appellee, was a scheme to evade the usury laws; and that the premiums should be treated as interest for the use of the money borrowed. If appellant is correct in this contention, all loans made by appellee are usurious with interest rates exceeding twenty percent per annum.

Among the loan papers signed by each borrower was one authorizing appellee to secure such insurance as it deemed necessary for its protection and to charge the premium therefor as a part of the principal of the loan. In other words, appellee loaned the borrower the money with which to pay the premium. The proof showed that the insurance was actually written and put in force by the insurance companies for premiums customarily charged for like insurance. The premium money charged for this insurance was actually paid over to the insurance companies and the borrowers were mailed the policies.

The testimony of a number of the borrowers varied as to the insurance aspects of the loans. A number testified that they did not know anything about any insurance purchased for them by appellee. Some knew that insurance had been purchased for their benefit. All acknowledged signing documents authorizing appellee to purchase the insurance.

(Hn 2) The chancellor found for appellee and held that requiring the borrowers to purchase insurance was not a scheme to evade the usury laws. This Court has held that it will look through the form of a transaction to the substance to determine whether a loan is usurious. The Court has held that usury cannot be hidden by schemes that merely appear to be valid when in substance they are evasions of the usury laws. This principle has been applied by other courts in connection with the charging of improper or exorbitant insurance premiums tied into loans when such practice has been found to be a mere sham and evasion of the usury laws. Cochran v. State (Ala.), 119 So. 2d 339; Nash v. State (Ala.), 123 So. 2d 24, 83 A.L.R. 2d 842; Tribble v. State, 89 Ga. App. 593, 80 S.E. 2d 711. The facts in those cases are entirely different from the one at bar and are not in point. The general rule is that a lender may require the borrower, as further security for the loan, to carry insurance and assign the policy to the lender without rendering the transaction usurious. 91 C.J.S., Usury, Sec. 49, p. 634. Appellee cites a number of cases, but we deem it unnecessary to discuss these cases in view of the specific findings of the chancellor in this regard. We hold that the chancellor was justified in his findings.

We are of the opinion that the courts should look with caution and carefully scrutinize transactions such as those involved in the present case, but the Court would not be justified in condemning appellees' practice as a sham to avoid the usury laws in view of the testimony and the findings of the chancellor.

## II.

(Hn 3) Appellant contends that appellee is liable for the privilege taxes levied by Code Sec. 9696-135, which levies a $2,000 tax on money lenders where a greater rate of interest than fifteen percent is charged for the reason that the potential interest yield on some of the loans exceeded fifteen percent. The appellant contends that since these isolated cases produced yields in excess of fifteen percent, the taxes are due. This Court held in Bailey v. North American Finance Co., 212 Miss. 97, 54 So. 2d 227, that rate of interest, the term used in the privilege tax statutes, is different from the effective yield in connection with the levying of taxes on loans charging a rate of interest greater than six percent. But we pretermit decision on the question whether, in applying the privilege tax laws, there is any difference between the rate of interest and the potential rate of yield. The privilege tax is levied under Code Section 9696-03 for engaging in a business. (Hn 4) Isolated transactions do not constitute engaging in business. In the recent case of State Tax Collector v. Nash, 147 So. 2d 507, and in Alt v. Bailey, 211 Miss. 547, 52 So. 2d 283, the usurious charges which made the lender liable for the privilege tax were those usually and customarily exacted of a borrower. (Hn 5) These privilege taxes are highly penal and we should not interpret the statute as requiring the payment of the tax for isolated transactions. Only six or seven of the loans made by appellee had a potential interest yield of over fifteen percent. It was shown that in one of appellee's offices about 600 loans were made in the course of a year. We are of the opinion that the chancellor was justified in finding that appellee was not "engaging in business" of lending money at a greater rate of interest than fifteen percent.

## III.

Appellant contends that the lower court erred in not finding that appellee was liable for the local privilege tax levied by Code Sec. 9696-134, which imposes a tax on each person engaged in the business of operating an industrial loan business as therein defined. The chancellor found that since appellee had paid the taxes imposed by Code Sec. 9341, that by reason of the exemption contained in Code Sec. 9344, appellee was exempt from the municipal tax imposed by Code Sec. 9696-134. The tax that appellee paid and which it contends entitles it to exemption from the local tax is that levied against "Finance Companies," by Chap. 3, Title 37, Vol. 7, Miss. Code of 1942, Recompiled, Secs. 9341-9351, inclusive. These sections were enacted originally as Chap. 110, Laws of 1940, and levy a tax of one-fourth of one percent of the indebtedness secured by tangible property. This tax is collectible by the State Tax Commission and Code Sec. 9344 provides that the tax is in lieu of all other taxes upon such business. It will be noted that this tax is not included in the statewide privilege tax code but is in a separate chapter. The statewide privilege taxes are levied by Code Secs. 9427, et seq., Miss. Code of 1942. The local privilege tax code under which appellant seeks to recover in this case is contained in Secs. 9696-01 to 9696-236, inclusive. The last enactment of the privilege tax code was by Chap. 137 of the Laws of 1944.

Code Sec. 9696-209 provides that the local privilege taxes shall be in addition to any and all other taxes and that if a person engages in more than one business for which a privilege tax is imposed, it shall pay separately the privilege tax imposed upon each separate business so conducted, and a separate privilege tax shall be paid for each place or location of such business. Code Sec. 9696-231 provides that a municipality shall not levy a

privilege tax on a privilege which has been licensed for state-wide purposes. Code Sec. 9696-235 specifically refers to the statewide privilege tax code.

In General Contract Corp. v. Bailey, 218 Miss. 484, 67 So. 2d 485, the Court held that the statewide privilege tax required by Code Secs. 9341, et seq., was not in lieu of the tax levied by Code Sec. 9696-135, but in a dictum stated that presumably a taxpayer who paid the state-wide finance company tax would be exempt from the local privilege tax levied by Code Sec. 9696-134.

It is noted that the tax levied by Code Sec. 9341 et seq. is offset against the income tax of the taxpayer. We are of the opinion that the tax levied on finance companies by Code Sec. 9341, et seq. was a measure to equalize the tax burden on local finance companies and those finance companies purchasing automobile and other contracts statewide. At any rate, the tax levied by Code Sec. 9341 is one on finance companies or commercial credit businesses as distinguished from the industrial loan business as defined in Code Sec. 9696-134. Both of these statutes are very broad and overlapping but they are intended to cover two taxable incidents. It is generally understood that a finance company or commercial credit company, taxed under Code Sec. 9341, et seq., is different from an industrial loan company, taxed under Code Sec. 9696-134.

An examination of all the data on the 29 loans testified about in detail in the present case makes it clear that the appellee was engaged in both the business of a finance company and that of an industrial loan company. We are, therefore, of the opinion that the chancellor erred in not levying the tax under Code Sec. 9696-134. We hold that the appellee is liable for taxes due the City of Jackson in the sum of $2800, plus a $1400 penalty; to the City of Meridian for $2,000, plus $1,000 penalty; to the City of Tupelo for $800, plus $400 penalty; and to the City of Columbus $300 taxes, plus $150 penalty.

The chancellor held that the State Tax Collector could not sue for these privilege taxes for the reason there had been no assessment. This question has been foreclosed in favor of the appellant's position in the recent case of State Tax Collector v. Nash, 147 So. 2d 507. Several other questions have been raised by the appellant but we deem it unnecessary to discuss them.

Judgment is entered here for appellant for the privilege taxes due under Code Sec. 9696-134 as hereinabove set out. In all other respects the decree of the lower court is affirmed.

Affirmed in part, and reversed in part.

*Lee, P. J., and Kyle, McElroy and Jones, JJ.,* concur.

## ON SUGGESTION OF ERROR

JONES, J.

Decision in this case was rendered February 11, 1963, and appears in 149 So. 2d 516, not yet reported in the Mississippi Reports.

The State Tax Collector filed a suggestion of error challenging said decision insofar as the parts thereof adverse to him are concerned. This suggestion of error is overruled.

The appellee has filed a motion for correction of judgment, together with a motion for the retaxing of costs. The decision here rendered on the suggestion of error filed by appellee renders these two motions moot.

Appellee has filed, together with the motions aforesaid, a suggestion of error attacking that part of our decision embodied in Section III, beginning on page 519 and being Headnote 6 in the Southern Reporter. It is appellee's contention that we were in error in holding that in addition to being engaged in the business of a finance company, appellee was also engaged in the business as an industrial loan company.

Upon restudy of this issue we have reached the conclusion that appellee is correct.

(Hn 6) Sec. 9341, Miss. Code of 1942, a part of the chapter covering finance companies, levies an annual statewide privilege tax upon every corporation other than banks "doing business of lending money secured by mortgages, trust receipts, retained-title or purchase contracts, on motor vehicles, furniture, refrigerators containing mechanical freezing units operated by gas or electricity, or radios or any other tangible personal property, located in the State of Mississippi, or doing a business of purchasing, discounting, or otherwise acquiring notes, trust receipts, or other forms of indebtedness secured by liens, . . ." This tax was paid by appellee. Sec. 9344 in the same chapter provides: "The tax hereby levied is in lieu of all other privilege taxes upon such business, and shall be paid to the commissioner, as provided by law, previous to enjoyment of the privilege for the period covered by the payment; . . . . ." Sec. 9696-134, being a part of the chapter on local privilege taxes, provides: "Each person engaged in this state in the business of making loans of money on personal or other securities, of selling and negotiating written evidences of debt for the payment of money either fixed or uncertain, and receiving payment therefor in installments or otherwise, and commonly known as 'industrial loan companies,' 'industrial banks,' 'Morgan Plan Company,' . . . . . . . shall be deemed to be operating an industrial loan business. . . . ." Under this section, privilege taxes are imposed locally for such business.

It will be noted that Sec. 9341 covers the part of the business described in Sec. 9696-134 as that of "making loans of money on personal or other securities." The payment of the tax under Sec. 9341 would care for this part of the business. Sec. 9696-134 also provides for a business "of selling and negotiating written evidences

of debt . . . . ." There is no evidence in this record that the appellee is selling or negotiating written evidences of debt for the payment of money either fixed or uncertain and receiving payment therefor in installments or otherwise. There is no evidence as we see it that the Murdock Acceptance Corporation is engaged in the business of an industrial loan company, industrial bank, Morgan Plan Company, or any such similar business.

(Hn 7) We believe that the industrial loan companies, industrial banks, etc., mentioned in Sec. 9696-134 are those financial institutions that invest funds chiefly in personal loans which it makes to consumers, and which obtains or is authorized to obtain its funds from individual savers, either through the acceptance of deposits or the sale of investment certificates. These institutions, unlike the ordinary finance lending institution must keep their funds invested with thought of the possible necessity of meeting withdrawals of deposits or investment certificates. Consumers' savings are probably the major source of funds. We take these observations from the "American Financial System" by James B. Ludtke; "American Financial Institutions" by Prochnow, and the Encyclopedia Americana, Vol. 19, page 479, which is a discussion of the Morris plan of industrial loans and investments. See also State v. Hinkle, 235 Pac. 359; County Board of Equalization v. Muskogee Ind. Fin. Corp., (Okla.), 357 P. 2d 224.

That part of the original opinion contained under Subdivision III, beginning at page 519 of 149 So. 2d, and encompassing Headnote 6, is hereby withdrawn. The suggestion of error of appellee is sustained and the case is affirmed. The suggestion of error of appellant is overruled.

Suggestion of Error of appellee sustained and case affirmed; Suggestion of Error of appellant overruled.

*Lee, P. J., and Kyle, Gillespie and McElroy, JJ.,* concur.