Equitable Life Assurance Society of the United States, Plaintiff-Appellee, v. Mauro L. Scali, et al., Defendants-Appellants.

Gen. No. 65–82.

Second District.

September 27, 1966.

Rehearing denied November 17, 1966.

ABRAHAMSON, J., dissenting.

Donald T. Morrison, of Waukegan, for appellants.

Russell & Bridewell, of Chicago, for appellee.

MR. PRESIDING JUSTICE MORAN delivered the opinion of the court.

This is an appeal from a mortgage foreclosure decree entered in favor of the plaintiff mortgagee, Equitable Life Assurance Society. The defendant mortgagors, Mauro L. Scali and his wife, Joanna, defended the action on the ground, among others, that the mortgage loan was usurious. Their appeal from the adverse ruling of the lower court presents a case of first impression in this State.

In 1957, the defendants purchased a home in Deerfield, Illinois, for $34,000 and obtained $25,000 of the purchase

money by borrowing that amount from the plaintiff. The loan was secured by a twenty-five year mortgage at five percent interest. At the time of the loan, plaintiff had appraised the market value of the property at $38,500. The amount of the loan was, therefore, roughly two-thirds the market value of the property.

As a condition of the loan, the plaintiff also required Scali to take out an Equitable life insurance policy in the amount of $25,000, and to assign the policy to Equitable as collateral security for the loan. At the time of the loan, Scali already had life insurance policies in force with the Northwestern Mutual Life Insurance Company in the face amount of $58,500. It appears that the "family income" provisions of these Northwestern Mutual policies brought their total value to approximately $75,-000. These Northwestern Mutual policies were permanent insurance and not term insurance.

Scali testified that he inquired of the Equitable agent as to whether he could assign his Northwestern policies to Equitable as collateral security for the loan, in lieu of purchasing an additional life insurance policy from Equitable. He was informed that this could not be done, and that Equitable would accept only a new or already existing Equitable policy. This testimony was not contradicted by the plaintiff, and the record is clear that, at the time of the loan in question, every mortgage loan made by Equitable had to be secured by one of its own insurance policies on the life of the borrower, regardless of what other life insurance the borrower might already have had or have been willing to acquire in lieu of an Equitable policy. Subsequent to the Scali loan, Equitable changed its policy in this respect. Moreover, the Equitable policy had to be one of ordinary life insurance, and not term insurance, which would have been less costly to the insured.

The defendants were required to make monthly payments of $195.73. Of this amount, $146.25 was for the

principal and interest on the mortgage loan, and $49.48 was for the life insurance premium. The payments on the mortgage and the insurance policy were inseparable, and it was provided that any default in payment on the insurance premiums would be considered a default on the mortgage, and the entire loan would become due.

Beginning in the latter part of 1958, Scali encountered problems with his employment and the monthly payments to Equitable were often delinquent. This situation continued for several years, and finally this foreclosure action was filed by Equitable in 1964.

In their answer to the complaint, the Scalis raised the affirmative defense of usury, pleading that the insurance premium was an additional charge exacted for the loan, and that when the insurance premium was added to the stipulated five percent interest, the total charge for the loan exceeded the seven percent maximum permitted by statute. It was their theory that, because of the usurious nature of the transaction, all interest on the loan was forfeited and, pursuant to Ill Rev Stats ch 74, § 6, defendants were entitled to a setoff against the remaining amount due on the principal, of all interest and insurance premiums paid, together with reasonable attorneys' fees and court costs.

It was stipulated that the monthly payment on a $25,000 loan for twenty-five years at seven percent interest—the legal maximum—was $176.70. As previously noted, the combined payment of the Scalis was $195.73.

■ One normally thinks of "usury" as the simple practice of charging a greater amount of "interest," clearly labeled as such, than the law allows. Since the "interest" in this case was only five percent, whereas the law allows seven percent, it is apparent at the outset that we are not dealing with the typical usury case, and, as we have indicated, there is no reported decision in this State which deals with the question presented.

We start with the fact that, by the terms of the statute itself, "usury" is by no means limited to the charging of excessive "interest." Sec 5 of ch 74, Ill Rev Stats, provides that:

"No person or corporation shall directly or indirectly accept or receive, in money, goods, discounts or thing in action, *or in any other way*, any greater sum *or greater value* for the loan, forbearance or discount of any money, goods or thing in action, than is expressly authorized by this Act or other laws of this State. . . ." (Emphasis added.)

The basic law concerning usury seems relatively uniform throughout the country, and it is clear that under certain circumstances the requirement of insurance in connection with a loan can, in some instances, render the entire transaction usurious. The cases from other jurisdictions are collected in a comprehensive annotation at 91 ALR2d 1344, entitled "Usury: requiring borrower to pay for insurance as condition of loan."

The general rule in other jurisdictions is that ". . . the requirement by a lender, whether an insurance company or otherwise, that the borrower should as a condition for obtaining the loan take out, and pay premiums on, a policy of insurance, and assign it to the lender as additional security for the loan, . . . does not, though making the cost of the loan exceed the highest legal interest, *necessarily* constitute usury where there is no showing that the requirement is intended to be, or is exacted as, *a mere shift or device to cover usury*," 91 ALR2d at 1348. We have added the emphasis in the foregoing quotation to demonstrate how any statement of the general rule—and the quoted statement puts it about as well as any we have seen—simply begs the question. The cases have been decided on their particular facts, and this is the only way they can be decided. In some factual

situations, there has been no difficulty in detecting the usury involved, since the insurance requirement has been a mere sham. For instance, there are cases where the borrower has been charged for insurance the lender was supposed to obtain for him, but no insurance was obtained. The "premium" simply went into the lender's pocket, where, commingled with the "interest" he was already getting, it caused all contents of the pocket to be regarded as usurious. There are other cases where the insurance was actually obtained, but the premium charged was patently in excess of the actual cost of the insurance. Here again, the courts have concluded that this kind of transaction is usurious. There is another class of cases which has a more direct bearing on the matter before us. These are the cases which hold that a transaction can be rendered usurious by a requirement that the borrower take out insurance which is excessive in amount or is otherwise unnecessary. In Strickler v. State Auto Finance Co., 220 Ark 565, 249 SW2d 307 (1952), it was held to be usurious to charge the borrower premiums on life and health insurance, in addition to the full legal interest rate, since it appeared that the loan was adequately secured by a mortgage on the borrower's household furniture, which could have been insured for a small premium, and that the borrower did not want the life and health insurance policies. In Moore v. Union Mut. Life Ins. Co., Fed Case No. 9777 (CC Neb 1876), it was held to be usurious under Nebraska law to require an $80,000 life insurance policy in connection with a loan of $20,000. In Miller v. Life Ins. Co., 118 NC 612, 24 SE 484 (1896), the court held that it was usurious for the life insurance company lender to require the borrower to take out a life insurance policy with it in the full amount of the loan when the company was already charging the maximum legal rate of interest on the loan and the loan was secured by a trust deed on real estate worth approximately twice the amount of the loan. See

also Wilson v. Whitworth, 197 Ark 675, 125 SW2d 112 (1939).

■ ■ From the foregoing cases, and our own reflection on the matter, we deduce a principle which we think is applicable to the present case. In determining whether the insurance requirement is usurious or not, the test is whether the insurance is reasonably necessary to secure the loan. This would not be the only test, of course, but it is the one which is relevant to the instant case. In a case where the lender is not also the insurer, or is not in any way benefiting from the insurance premiums, then the lender would not be "accepting" or "receiving" any additional value by reason of the premiums, and probably could not be charged with usury. However, where the lender requiring the insurance is itself the insurer, or agent for the insurer, there is no doubt that the lender is receiving something of value for the loan—namely, the profit involved in the insurance transaction—in addition to the interest charged. Where the insurance is not reasonably necessary to secure the loan, and the total of interest and the insurance premium exceeds the legal rate of interest, usury is what we have.

The plaintiff cites many cases in support of the general rule that an insurance requirement does not necessarily render a loan transaction usurious. The cases it cites, however, did not involve situations where the borrower was required to take out insurance which was not in fact necessary to secure the loan.

The plaintiff also argues that the insurance premiums were not payments made for the loan, but were, rather, payments made for $25,000 worth of life insurance, and that there was, therefore, adequate consideration for the premiums quite aside from the mortgage loan. The memorandum opinion of the trial court is based largely upon his acceptance of this argument. However, the fallacy of this argument is that, once you accept it, there is no limit to its persuasiveness, or the amount of insur-

ance compared to the amount of the loan as found in the Moore case, supra. If the premium were a reasonable and customary one for that amount of insurance, then the borrower would be receiving what he pays for in the way of insurance. Would this make the transaction proper? If plaintiff's argument is correct, apparently it would. However, we think that no court would have any difficulty in finding that such a scheme was a transparent device to make life insurance profits in addition to the legal interest rate. We think there is some merit to plaintiff's argument, but it relates to a different point altogether. If the question is not whether the insurance is necessary, but whether the premium is excessive, then it is important to know whether the borrower paid for more insurance than he received. But where the contention is made that the insurance simply was not necessary to secure the loan, no matter what the premium, it is no answer to say that the borrower got the insurance he paid for.

The defendants in the instant case do, in fact, claim that they were paying an excessive premium, primarily because they were required to take out ordinary life insurance rather than the cheaper term insurance. They also complain that certain conditions of the policy were unduly onerous, such as the requirement that cash reserves be applied only to payment of the mortgage indebtedness. We think these matters are debatable at best, and, if defendants' argument were limited to these, we would not be inclined to reverse the determination of the trial court.

Defendants also raise questions as to whether this tie-in between the mortgage loan and the insurance violates the federal antitrust laws, but we need not determine such question in order to decide this case. Instead, we believe the crux of the case is the relatively clear-cut question of whether this life insurance policy was rea-

sonably necessary to secure the mortgage loan. This was a loan of $25,000. It was secured, first of all, by real estate which, according to plaintiff's own appraisal, was worth $38,500 at the time of the loan. We do not by any means think that this is dispositive of the question of whether life insurance is proper as additional security. Real estate values have a way of fluctuating; property can depreciate; foreclosure proceedings are expensive and time consuming. The weight of authority is to the effect that, in a proper case, insurance on the life of the borrower can properly be required in addition to the security provided by the real estate, and we are not inclined to depart from that view in this case. However, this does not mean to say that the security afforded by the real estate is to be disregarded, either. It has relevance in connection with the additional fact that Scali already had life insurance policies with another company in the face value of about $58,500 which he was prepared to assign to Equitable as additional security for the loan. Try as we may, we cannot see why real estate valued at $38,500, together with life insurance policies with a value of at least $58,500, for a total value of $97,000, should not be sufficient security for a loan of $25,000. Put another way, we do not think that in order properly to secure this loan, it was reasonably necessary for Equitable to sell Scali another insurance policy in any amount, let alone one in the amount of $25,000. We conclude from the evidence that Equitable was at least as interested in selling life insurance as it was in making this mortgage loan, and that the purpose of requiring Scali to buy the policy was not to provide necessary security for the loan but was, rather, to make a profit on the life insurance in addition to the interest on the loan.

■ ■ Usury is a proper defense in a mortgage foreclosure case, Eldred v. Williamson, 33 Ill App2d 10, 178 NE2d 414 (First Dist 1961). It is an affirmative de-

263

fense, and the Scalis had the burden of proving it. In terms of the specific situation here, they had the burden of proving that their Northwestern Mutual policies, alone or together with the mortgage on the real estate, were ample security for the $25,000 loan. We think they met this burden. The value of the real estate was uncontradicted, and, as indicated, was based upon the plaintiff's own appraisal. Scali testified that he had the Northwestern policies with a face value of $58,500, and that they were in force. Plaintiff does not argue on this appeal that there was anything wrong with these Northwestern policies. Its point, rather, is that their existence was irrelevant. We think, however, that when the Scalis proved the existence of the policies they were proving something relevant, and that it then became incumbent upon the plaintiff to go forward and show that there was some reason why these Northwestern policies, together with the real estate, did not provide sufficient security for its loan. It is pertinent to note at this point that the Northwestern policies were in fact assigned to a bank as additional security for a second mortgage on the property sometime after the defendants obtained their loan from Equitable.

The plaintiff argues in its brief that there were sound business reasons for requiring its own policy rather than a policy of another company, but this argument is not based upon any evidence in the record.

Defendants claim that they were entitled to a jury trial on their usury defense, but, in view of the decision we have reached, it will be unnecessary to pass upon this issue.

We believe that the defendants have proved their defense of usury, and that they are entitled to relief in accordance with Ill Rev Stats, ch 74, § 6. The case is reversed and remanded for further proceedings consistent

with these views, which will include the taking of evidence as to defendants' reasonable attorneys' fees.

Reversed and remanded.

DAVIS, J., concurs.

ABRAHAMSON, J., dissents.