(No. 40406.—

THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant, *vs.* MAURO L. SCALI *et al.,* Appellees.

*Opinion filed Nov. 30, 1967.—Rehearing denied Jan. 18, 1968.*

CLARENCE H. ROSS, ROLAND D. WHITMAN, HUGH A. ZIMMERMAN, DAVID A. BRIDEWELL, and VINCENT P. REILLY, all of Chicago, (ROSS, HARDIES, O'KEEFE, BABCOCK, McDUGALD & PARSONS, and RUSSELL & BRIDEWELL, of counsel,) for appellant.

MORRISON & NEMANICH, of Waukegan, (DONALD T. MORRISON, of counsel,) for appellees.

ALTHEIMER, GRAY, NAIBURG, STRASBURGER & LAWTON, of Chicago, (DANIEL M. PIERCE, of counsel,) for *amicus curiae*.

Mr. JUSTICE HOUSE delivered the opinion of the court:

A decree of foreclosure of a residential loan was entered by the circuit court of Lake County in favor of plaintiff, The Equitable Life Assurance Society, against the defendants, Mauro L. and Joanna Scali, husband and wife. The Appellate Court, Second District, reversed, holding the mortgage loan to be usurious (75 Ill. App. 2d 255), and we granted leave to appeal.

Plaintiff made a loan upon the new home of defendants

for $25,000 bearing five per cent interest, which loan was completed March 21, 1958. Equitable's uniform practice at that time was to require a borrower to assign a permanent (as distinguished from term) Equitable policy on the borrower's life in an amount equal to the face amount of the loan. Scali at that time had in force ordinary life policies in Northwestern Mutual totaling more than double the amount of the loan which he offered to assign to plaintiff. Simultaneously with closing the loan Scali purchased and assigned a $25,000 Equitable policy as additional security. The monthly payments were fixed at $195.73, of which $49.48 was insurance premium and the balance covered principal and interest. Default in payment of installments was to accelerate payment and one of the terms was that in the event of default the policy's cash reserve would be used to purchase nonparticipating paid-up extended term coverage.

About March, 1960, defendants' payments began to become delinquent. They defaulted 13 times in their installments, and taxes were advanced by plaintiff for the years 1958 through 1962. Policy loans of $628 and $1582 were made from which some of the delinquent installments were paid. By May 18, 1964, when foreclosure proceedings were commenced, defendants were in default on five installments in the sum of $731.25, and they owed plaintiff $2491.48 plus interest for unpaid real-estate-tax advances, while the cash surrender value of the insurance was $966.11. The policies lapsed on June 1, 1964, and the insurance was converted to extended term paid up to 1970.

The appellate court bottomed its opinion upon the theory that the additional insurance was not "reasonably necessary" to secure the mortgage loan. It held the insurance premiums to constitute illegal additional charges which, when added to the five per cent interest charge, caused the interest rate to exceed the statutory limit of seven per cent, and then directed application retroactively

of the usury sanctions imposed by section 6 of the interest statute (Ill. Rev. Stat. 1965, chap. 74, par. 6), as amended in 1963 by increasing the penalties from forfeiture of all interest to double the total of interest and other charges plus court costs and the borrower's reasonable attorneys fee.

Despite the activity in recent years of the General Assembly in this general area, there is no prohibition of a transaction such as that with which we are here concerned. It has shown an awareness of the problem by enacting specific legislation, primarily in the field of small loans, prohibiting a lender from specifying itself or other carrier as the source from which insurance must be procured. Article IX½ of the Insurance Code (Ill. Rev. Stat. 1965, chap. 73, pars. 767.51 et seq.), enacted in 1959, gives the borrower the option of furnishing insurance through his existing policies or through coverage of any authorized insurer. (par. 767.61.) It is noteworthy, however, that section 767.51(b) specifically limits applicability of the option provision to loans of less than 5 years duration, and it seems apparent that public policy requiring such a prohibition for small loans or short term loans was not thought to extend to the field of long term residential mortgage loans.

The general rule is stated in 91 A.L.R. 2d 1349: "It has generally been held that the requirement by a lender, whether an insurance company or otherwise, that the borrower should, as a condition for obtaining the loan, take out and pay premiums on a policy of insurance, and assign it to the lender as additional security for the loan, or that the borrower should pay for the expenses, other than premiums, incurred by the lender in procuring or maintaining such insurance, does not, though making the cost of the loan exceed the highest legal interest, necessarily constitute usury where there is no showing that the requirement is intended to be, or is exacted as, a mere shift or device to cover usury." Defendants concede the correctness of the rule but state that when certain factors are present some

courts have held similar transactions to be usurious. These factors are said to make a loan usurious where an assignment of a life policy is a condition to making the loan, when the borrower is required to buy insurance from the lender who is also the insurer and where there is other ample security for the loan. After citing several cases to sustain this theory, defendants say: "None of these cases individually announces a majority rule. Nor do we contend they are controlling here." They then argue that where all of the foregoing factors are present, the majority rule should be that the transaction is usurious.

Courts in a number of States have held loans not to be usurious where the lender requires that a loan be further secured through life insurance issued by it for the face amount of the loan. Various provisos are attached, such as: the insurance must actually be put in force for premiums customarily charged, there must be no bad faith and policy conditions should be the same as those issued to nonborrowers. (*Union Central Life Ins. Co.* v. *Hilliard,* (1900) 63 Ohio St. 478, 59 N.E. 230; *Niles Heaberlin* v. *Jefferson Standard Life Ins. Co.,* (1933) 114 W. Va. 198, 171 S.E. 419; *Winter* v. *Murdock Acceptance Corp.,* (1963) 246 Miss. 698, 149 So. 2d 516; *Washington Life Ins. Co.* v. *Paterson Silk Mfg. Co.,* (1874) 25 N.J. Eq. 160; *Sledd* v. *Pilot Life Ins. Co.,* (1935) 52 Ga. App. 326, 183 S.E. 199; and cf.: *Friedman* v. *Wisconsin Acceptance Corp.,* (1926) 192 Wis. 58, 210 N.W. 831.) Some of the cases such as *Heaberlin* and *Hilliard* point out that full consideration was paid for the premiums in the assumption by the lender of the insurance risk, and the insurance benefits to the borrower-insured rested upon an independent consideration. This *quid pro quo* approach was used in the early New York case of *Clarke* v. *Sheehan,* (1872) 47 N.Y. 188, 195-6, where it was said: "If, by the collateral contract, some benefit is secured to the lender, for which the borrower does not receive an equivalent, and which the lender would

not have obtained, except for the loan, and which is intended as additional compensation for the loan, it is usury. But, if provision is made for full compensation to the borrower for all he may do under the collateral contract, there is no usury. * * * When the collateral contract provides full compensation to the borrower for all that he agrees to do, the case is equally free from the evil at which the statute is aimed."

An analysis of the cases cited by defendants indicates that some of them announce a contrary rule, while others are either distinguishable on their facts or factors other than the lender's insurance requirements were present.

*Miller* v. *Life Ins. Co. of Virginia,* (1896) 118 N.C. 612, 24 S.E. 484, followed by two other North Carolina cases, flatly held the insurance requirement to constitute usury. In 1915, however, the legislature passed an act granting to a lender the right to require insurance from itself.

The Arkansas court likewise declared the "tie in" of insurance to make the transaction usurious, but other circumstances intervened. In *Wilson* v. *Whitworth,* (1939) 197 Ark. 675, 125 S.W.2d 112, the loan was for only $150 and life insurance, though from another company, was required in the amount of $3500. *Stricklor* v. *State Auto Finance Co.,* 220 Ark. 565, 249 S.W.2d 307, was a case where life and health premiums from a carrier other than the lender amounted to about 10% of the net principal sum of $289.80. Each of those cases involved a chattel mortgage and it was said that the borrower furnished ample security for the loan and the intent was to exact more than the lawful rate of interest.

In *Tribble* v. *State,* 89 Ga. App. 593, 80 S.E.2d 711, the loan was held to be usurious for several reasons, one of which was the insurance coverage demanded. The defendant was not licensed under the Small Loan Act and the insurance required was sold by him as agent with 85% of

the premiums going to him as commission. The remaining 15% from which claims would be paid (none ever had been paid) belonged to the agent rather than the insurance company. Under these facts the court was held to be justified in finding that this was not a good-faith insurance transaction, but was a device to exact usury. Another case cited by both parties, *Sledd* v. *Pilot Life Ins. Co.*, (Ga. 1935) 183 S.E. 199, involved requirement for insurance but not necessarily from the lender and it was held that there was no usury. The court did note in passing that the borrower was not required to take out the insurance with the lending insurance company, but did not indicate how it would have ruled had the requirement been that insurance had to be taken from the lender.

*Nash* v. *State*, 271 Ala. 173, 123 So. 2d 24, while holding that the insurance had no reasonable value to borrowers and the insurance requirement had no purpose other than to collect more interest than permitted by law, reversed the trial court's injunctive order because of failure to show the loans to have been made to necessitous borrowers.

In *Moore* v. *Union Mutual Life Ins. Co.*, (C.C. Neb. 1876) 17 Fed. Cas. No. 9777, the borrower was not only required to purchase insurance upon his own life for the face amount of the loan of $20,000 but was also to pay premiums on $60,000 additional on the lives of two brothers.

We do not find these cases persuasive. It is the province of usury laws to limit the amount which a lender may charge for the use of money, the basic purpose of which is to protect a borrower from the exaction of excessive interest. Obviously, all charges are not interest, and it is only those exacted as additional cost for the use of money that renders usurious an otherwise legal interest rate. To hold that premiums for life insurance required by a lender are a charge for the use of money not only prohibits a practice generally recognized as useful but overlooks completely the

value of the coverage to the borrower. In the event of death his loan would be paid from the insurance proceeds and his family or other devisee takes title free and clear of the mortgage indebtedness. On the other hand, if he survived long enough to repay his loan, the face amount of the policy together with accumulations would be paid to his beneficiary.

We think it would be illogical and contrary to sound public policy to hold the requirement of life insurance as a prerequisite to securing a loan to thereby render the loan usurious. Nor does it make any difference whether the requirement is that the insurance be secured from the lender (assuming that the terms are the same as those of other companies) or from other carriers. Since premiums cannot be classified as additional charges by the lender for the use of money when the insurance is procured from outside sources, they likewise are not an added charge for use of money when the insurance is procured from the lender. It is not within the province of the courts to decide whether or how much insurance is reasonably necessary to secure a loan. Circumstances vary so widely that the question would have to be determined on an *ad hoc* basis. This approach taken by the Appellate Court, apparently influenced by the fact of existing insurance, would result in chaos. Application of usury laws by the courts under these circumstances could be construed as a device to·regulate loan and insurance practices and should be avoided. Lenders, not the courts, should have the right to determine what constitutes adequate security for their loans under proper regulatory and supervisory bodies.

We are of the opinion that the requirement that a borrower acquire and assign life insurance of the lender up to the amount of his loan as additional security for the loan does not render the interest usurious, absent a showing from an examination of the entire transaction that the insurance requirement was a mere device to collect usurious interest.

There is nothing in this record to justify a holding that the intent and purpose of plaintiff was to collect usurious interest. The premiums and policy terms were identical with policies sold to nonborrowing assureds, and the rates charged were competitive with other companies. The judgment of the Appellate Court, Second District, is therefore reversed, and the decree of the circuit court is affirmed.

*Appellate Court reversed;*
*circuit court affirmed.*