PAYNE, J.,
for the Court:
PROCEDURAL POSTURE AND ISSUES PRESENTED
¶ 1. Larry Garmon, after a jury trial, was found guilty of one count of burglary. The Lee County Circuit Court, the Honorable Thomas J. Gardner, III presiding, sentenced Garmon to serve a term of twenty-five years in the custody of the Mississippi Department of Corrections. After unsuccessfully pursuing his motion for JNOV, Garmon perfected this appeal, raising the following two issues for our consideration
I. WHETHER THE TRIAL COURT ERRED IN ALLOWING LILLIAN TROTTER TO TESTIFY TO ALLEGED HEARSAY STATEMENTS?
II. WHETHER THE TRIAL COURT ERRED IN RESTRICTING THE CROSS-EXAMINATION OF TROTTER REGARDING HER ALLEGED BIAS AND PREJUDICE AGAINST GARMON?
¶ 2. On reviewing the record and applicable law, we find Garmon’s assignments of error to be without merit. Accordingly, we overrule the same and affirm the conviction and sentence in this case.
FACTS
¶ 3. Dorada Hurtt, Lillian Trotter, and Larry Garmon lived in the same apartment complex in Tupelo. On December 28, 1996, Hurtt was out of town. On this day, Trotter reported to police that Gar-mon had burglarized Hurtt’s apartment. Trotter claimed that she was asked by Hurtt to “watch the house” while Hurtt was out of town. Trotter had a key to Hurtt’s apartment. Trotter testified that she noticed that a vase that normally sat in Hurtt’s window was on the ground and broken. Knowing this was unusual, Trotter investigated and found the screen on the window of Hurtt’s apartment had been removed. When she peered inside, she spotted Garmon and confronted him. According to Trotter, Garmon maintained that he had been asked by Hurtt to look after the apartment in her absence. Rejecting this explanation, Trotter demanded that Garmon exit Hurtt’s apartment. Gar-mon complied, and he and Trotter proceeded to argue. Trotter testified that there was a VCR inside a plastic bag on Hurtt’s couch which Garmon had abandoned when he left the. apartment on her command.
¶ 4. Garmon testified on his own behalf. According to Garmon, he was working at the time the burglary occurred. Qarmon maintained that Trotter disliked him and fabricated these charges. Further, Gar-mon had experienced previous problems with Trotter. At the time of his initial *544 arrest on December 28, 1996, Garmon was detained for public intoxication. Two days later, a warrant was issued for burglary of Hurtt’s apartment. Garmon was arrested on that warrant. After a trial, a Lee County jury convicted Garmon of burglary.
ANALYSIS AND DISCUSSION
I. WHETHER THE TRIAL COURT ERRED IN ALLOWING LILLIAN TROTTER TO TESTIFY TO ALLEGED HEARSAY STATEMENTS?
¶ 5. As his first assignment of error, Garmon points to two statements testified to by Trotter that were allegedly hearsay not subject to an exception to the hearsay rule. The Mississippi Rules of Evidence 801(c) define hearsay as “a statement other than one made by the declar-ant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted.”
¶ 6. The first portion of testimony of which Garmon complains comes in the record after Trotter had testified about finding Garmon in Hurtt’s apartment. Trotter testified that she confronted Garmon about being in Hurtt’s apartment:
TROTTER: He [Garmon] just told me Dorrie and them — and he wasn’t going to come out [of Hurtt’s apartment]. I said, “You open the door.” And he finally opened the door and I went in there.
PROSECUTOR: And what occurred while you were in there?
TROTTER: We fussed. I told him he didn’t have no business in there. He needed to get out and I was going to call the law on him. And he said, “No, you’re not going to call the law.” I said, “Yes, I am.” He said, “No. If you do, I’ll beat the hell out of you.”
:¡: # % %
TROTTER: And this other colored boy named Tony — I don’ know what his last name is — he was down at Kathy’s and John’s and they were standing outside.
And he finally come down there and told him that he needed to leave and go away—
GARMON’S COUNSEL: Objection, Your Honor.
TRIAL JUDGE: Objection overruled. You may proceed.
PROSECUTOR: Go ahead. You may continue.
TROTTER: And he told him to leave me alone and go away. And he finally went back up there and I went on down and called the cops at Dr. Weatherly’s.
Garmon maintains that this testimony constituted hearsay not subject to any exception. We disagree. Trotter’s testimony as to what Tony and Garmon told her was non-hearsay and properly admissible. As set out above, hearsay testimony occurs when the declarant offers a statement made outside the courtroom for the purpose of proving the truth of the matter asserted. The statements testified to by Trotter made by Tony and Garmon were not offered for the truth of their contents, but rather for the effect on the hearer, Trotter. Therefore, it was not hearsay and was admissible.
¶ 7. Garmon next points to another allegation of hearsay, this time elicited from Trotter on cross-examination by Gar-mon’s counsel, regarding Trotter’s knowledge of whether Garmon lived in the apartment complex in question:
GARMON’S COUNSEL: Now, Mr. Garmon had lived there for some time before this happened?
TROTTER: Well, he stayed there. He didn’t live there.
GARMON’S COUNSEL: What do you mean he stayed there?
TROTTER: He stayed with Dorrie and John.
GARMON’S COUNSEL: Well, if he didn’t live there — if he stayed there, where did he live?
TROTTER: He was in and out there all the time. That’s all I can say.
*545 GARMON’S COUNSEL: Well, how do you know he didn’t live there?
TROTTER: Pardon?
GARMON’S COUNSEL: How do you know he didn’t live there?
TROTTER: Well, I don’t for sure.
GARMON’S COUNSEL: Okay.
TROTTER: I just said he was down there and he stayed there.
GARMON’S COUNSEL: You said he did not live there.
TROTTER: Not that I know of. He wasn’t supposed to be living there. In fact, I believe if you will ask him, Dr. Weatherly told him not to be down - there.
GARMON’S COUNSEL: We object to that and we ask that it be stricken and the jury advised to disregard that statement.
PROSECUTOR: He asked the question, Your Honor, and she answered it. TRIAL JUDGE: All right.
GARMON’S COUNSEL: I did not ask her any question about any doctor and what he may have said, Your Honor.
PROSECUTOR: How do you know he didn’t live there.
TRIAL JUDGE: Well, I’m not going to instruct the jury, Counsel. Go ahead.
¶ 8. Garmon complains that Trotter’s testimony regarding Dr. Weatherly’s allegedly having told Garmon not to be at the apartment complex constituted hearsay and prejudiced the jury against Gar-mon. According to Garmon, the jury was left to wonder why he had been instructed not to be on the premises. While Trotter’s testimony as to what Dr. Weatherly told Garmon was inadmissible hearsay, “[i]t is axiomatic that a defendant cannot complain on appeal concerning evidence that he himself brought out at trial.” Harrison v. State, 724 So.2d 978, 983 (¶ 11) (Miss.Ct.App.1998) (quoting Fleming v. State, 604 So.2d 280, 289 (Miss.1992)). Further, “[w]here corroborative evidence exists and the hearsay evidence is merely cumulative, the admission may be held to be harmless.” Id. (quoting Young v. State, 679 So.2d 198, 203 (Miss.1996)). Accordingly, Garmon’s assignment of error with regard to this instance of hearsay is overruled.
II. WHETHER THE TRIAL COURT ERRED IN RESTRICTING THE CROSS-EXAMINATION OF TROTTER REGARDING HER ALLEGED BIAS AND PREJUDICE AGAINST GARMON?
¶ 9. As his second issue, Garmon argues that the trial court erred in limiting the cross-examination of Trotter regarding her alleged bias against Garmon. The relevant testimony, according to Garmon and quoted from the record below in order to demonstrate the character of the testimony, was as follows:
GARMON’S COUNSEL: Now, John and Kathy Belcher are white, are they not?
TROTTER: That’s right.
GARMON’S COUNSEL: And Dorrie Trotter is white, also?
TROTTER: Yes, sir.
GARMON’S COUNSEL: And a person for whom you are a guardian is white?
TROTTER: Yes, sir.
GARMON’S COUNSEL: Now, Mr. Garmon is the only black man there?
TROTTER: I have no thing—
GARMON’S COUNSEL: I’m just asking you. Is that correct or not?
TROTTER: I’m just telling you, he’s black; but I have no problems with that. I have a lot of black friends.
GARMON’S COUNSEL: Is that why you were keeping an eye on him?
TROTTER: Pardon?
GARMON’S COUNSEL: Is that why you were keeping an eye on Mr.'—
TROTTER: I didn’t keep an eye on him. What he did was his own business. What happened—
GARMON’S COUNSEL: I mean, you kept up when he came and went, right?
TROTTER: Pardon?
*546 GARMON’S COUNSEL: You kept up when he came and went?
TROTTER: No, I didn’t. I don’t know when he came and went. I know what he did around with Dome’s house.
GARMON’S COUNSEL: What did he do around—
TROTTER: He broke in there.
GARMON’S COUNSEL: He broke in there?
TROTTER: Yes, he did. There’s no getting around that.
GARMON’S COUNSEL: Had Mr. Gar-mon been in your apartment before?
TROTTER: I done told you, yes, he has been in my apartment, but not when I’m not there.
GARMON’S COUNSEL: I wasn’t aware you told me that. I’m sorry.
TROTTER: Pardon?
GARMON’S COUNSEL: How often was he in your apartment?
TROTTER: I don’t know. Maybe once a day, maybe once a week or something like that. He didn’t come down there very often.
GARMON’S COUNSEL: Well, did he steal anything from you?
TROTTER: Excuse me. Pardon?
GARMON’S COUNSEL: Did he steal anything from you?
TROTTER: Pardon? I didn’t hear you. I’m sorry.
GARMON’S COUNSEL: Has he ever stolen anything from you?
TROTTER: Not that I know of.
GARMON’S COUNSEL: Have you ever had an occasion to call the police on him or have him arrested?
TROTTER: That one time and he was arrested again. Dorrie called the police on him. Well, she called the police on John one night when they got — he got into it with her boyfriend and they found Larry down there in the closet.
GARMON’S COUNSEL: John. Who are you referring to, John who?
TROTTER: Pardon? No. John was the guy that Dorrie went with.
GARMON’S COUNSEL: So, he was— he stayed with her quite often? John stayed with Dorrie?
TROTTER: Yeah, they lived together.
GARMON’S COUNSEL: They lived together. And Mr. Garmon was a friend of John’s, also, was he not?
TROTTER: I wouldn’t know. I’m not going to answer that because I don’t know.
GARMON’S COUNSEL: Okay. But you’re saying that Dorrie called the police on John Belcher—
TROTTER: Yeah, and they come.
GARMON’S COUNSEL: — with whom Mr. Garmon lived?
TROTTER: They arrested John and him because Dr. Weatherly had a warrant out that Larry was not supposed to be down on the property.
GARMON’S COUNSEL: Why wasn’t he supposed to be on the property?
TROTTER: You’d have to ask Dr. Weatherly that. I don’t know.
GARMON’S COUNSEL: Well, I’m asking you what you know about it.
TRIAL JUDGE: Counsel, what’s the relevance of this?
TROTTER: I don’t know.
TRIAL JUDGE: This is something that has nothing to do with this incident that I’m aware of. Let’s move along.
GARMON’S COUNSEL: So, Mr. John Belcher was arrested at the request of Dorada Hurtt?
PROSECUTOR: Objection, Your Hon- or. I think you just ruled on that.
TRIAL JUDGE: Yes, sir. Let’s move ahead.
GARMON’S COUNSEL: Have you ever known Mr. Garmon to steal from anybody else there before all this happened?
TROTTER: Well, some other stuff was stolen. I don’t know whether he had anything to do with it or not. The guy *547 that I said that I did — was guardian to said that he come in there and got his television and his VCR. The police were called. I called the police that night, but I didn’t know.
TRIAL JUDGE: Hold on just a minute. Let’s not go into this. All right, Counsel.
GARMON’S COUNSEL: So, you’re not aware of anything that he’s stolen there?
PROSECUTOR: Whoops, Your Honor.
TRIAL JUDGE: Yes, sir?
PROSECUTOR: He is asking the question that you just—
TRIAL JUDGE: I understand that and we’re not going into it, Counsel. Let’s move along.
GARMON’S COUNSEL: No further questions, Your Honor.
 ¶ 10. Garmon maintains that the trial court erred in restricting his cross-examination of Trotter as to her bias. “Mississippi has afforded defense counsel wide latitude in cross-examination.” Smith v. State, 733 So.2d 793, 801 (¶ 41) (Miss.1999) (citing Nalls v. State, 651 So.2d 1074, 1076 (Miss.1995); Horne v. State, 487 So.2d 213, 216 (Miss.1986)). Moreover, “[t]he right of confrontation ‘extends to and includes the right to fully cross-examine the witness on every material point relating to the issue to be determined that would have a bearing on the credibility of the witness and the weight and worth of his testimony.’ ” Young v. State, 731 So.2d 1145, 1151 (¶ 38) (Miss.1999) (quoting Myers v. State, 296 So.2d 695 (Miss.1974)). “The scope of cross-examination, although ordinarily broad, is within the sound discretion of the trial court and such court possesses inherent power.to limit cross-examination to relevant factual issues.” Dozier v. State, 257 So.2d 857, 858 (Miss.1972) (citing Winter v. Nash, 245 Miss. 246, 147 So.2d 507 (1962)).
¶ 11. In the case sub judice, we disagree with Garmon’s assertion that the trial court improperly limited his cross-examination of Trotter. As demonstrated from the lengthy record citations above, the trial court allowed Garmon’s counsel to pursue whether or not Trotter harbored a racial bias toward Garmon as well as whether she was aware of any other instances of Garmon stealing items in the apartment complex. Trotter answered both in the negative — she harbored no racial bias and she was unaware of any other items he had stolen in the apartment complex. As we find no abuse of discretion by the trial court, in limiting the cross-examination of Trotter after she had answered the inquiries posed by Garmon’s lawyer, we overrule this assignment of error.
CONCLUSION
¶ 12. Having found that Garmon’s assignments of error with regard to alleged inadmissible hearsay testimony and alleged improper limitation of cross-examination are without merit, we affirm the conviction and sentence in this case.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY OF CONVICTION OF ONE COUNT OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED AGAINST LEE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, AND THOMAS, JJ., CONCUR.